HALEY, Administrator, v. THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY.

I. Per LOWE, Ch. J., DILLON and COLE, JJ.

1. **Torts: NEGLIGENCE: PROXIMATE RESULTS.** The plaintiff's intestate was ejected by the defendant's conductor from a train of cars, and left, in the night time, in a state of intoxication. near the railroad track; several hours after, at a distance of half a mile from the station where he was displaced, he was killed by another train of cars: *Held*, That to entitle the plaintiff to recover, it should have been made to appear, to the satisfaction of the jury, that the killing was the natural or proximate result of the act of defendant's agent.

2. —— INSTRUCTION. In the trial of the cause, the attention of the jury should have been called to the distance between the place where the deceased was left and that where he was killed; the time which elapsed between his removal from the cars and his death, as presenting a material question for their determination; whether or not his faculties had so far

recovered, with the power of locomotion, as to enable him to understand the danger of being upon the track while the trains of cars were passing.

3. —— MUTUAL NEGLIGENCE. The plaintiff cannot recover for an injury resulting from the negligence of defendant, if the want of care or prudence in the party injured in any way contributed directly to the injury.

4. —— APPLICATION. The principles above stated being applied to the case at bar, it is held that the verdict of the jury is clearly against the law as well as the facts of the case.

## II. Per WRIGHT, J., dissenting.

5. —— INSTRUCTIONS AND VERDICT. The instructions given to the jury were not erroneous; no instructions were asked and refused. The issues of fact were submitted to the jury, and the verdict should not, under the circumstances, be disturbed.

6 —— IMPERFECT AND INDEFINITE INSTRUCTIONS. That instructions are indefinite and do not state all the law applicable to the case, does not constitute sufficient ground for reversal when the instructions given were correct and no additional ones were asked by counsel.

## *Appeal from Clinton District Court.*

## THURSDAY, JUNE 21.

THIS is a suit to recover of the defendant damages for the wrongful treatment and negligent conduct of its servants, whereby the death of one James Rogus was occasioned.

The gravamen of the charge as laid in the petition is, that in September, 1864, Rogus was a passenger on one of the cars then running; that he was forcibly ejected therefrom at a time when he was of unsound mind and intoxicated, and was so injured that he was incapable of exercising any care of himself, which defendant well knew; and in this condition was left on the track of the railway, by reason of which a train of defendant's cars ran over and injured him, and caused his death.

The defendant denies this charge as broadly as made; also admits and justifies the putting of the said Rogus off of the cars by the conductor, as it was its right to do,

under the rules and regulations established for operating its trains, for the reason that said Rogus refused to pay or exhibit a ticket in payment of his passage. He was also noisy, profane and obscene in his language, disturbing and annoying other passengers. He refused to be quiet. He was put off without injury; no more force was used than necessary, to effect that object; his death was the result of his own drunkenness.

At the trial the jury found for the plaintiff in the sum of fifteen hundred dollars damages.

A motion for a new trial was filed, based upon two general grounds, that the verdict was against the evidence and contrary to law; and the instructions of the court numbered three, six and eight were erroneous. This motion was overruled and the defendant appeals.

*J. H. Flint* for the appellant.

I. No sufficient evidence was introduced on the trial proving that James Rogus was *wrongfully* ejected from the defendant's cars. Or that he was killed by reason of any *wrongful* act of the defendant. Railroad companies have the right to make all reasonable rules and regulations for the conduct of passengers while on the trains, or in the stations; and may forcibly remove them therefrom, using no unnecessary violence, if they persist in disobeying such rules or regulations, without being civilly or criminally liable. *The Commonwealth* v. *Power*, 7 Metc., 596; Pierce Am. R. R. Law, 248, 252, 400, 492; *The State* v. *Overton*, 4 Zabr., 441; *Willetts* v. *The Buffalo and Rochester Railroad Company*, 14 Barb., 585; *Crocker* v. *Willamantic and Palmer Railroad Company*, 24 Conn., 249.

II. If it be established that Rogus was *rightfully* ejected from the cars at Ramessa, then it cannot be claimed that defendant is liable for the injury complained of. If, on

the other hand, Rogus was wrongfully ejected, defendant may be liable for the *putting off*, and not for the killing. Defendant is only liable for all consequences which might have been foreseen and expected as the result of its conduct, and not for those which could not have been foreseen, and therefore it was under no obligation to take into consideration. 2 Pars. on Cont., 456. Defendant is liable only for the *natural* consequences of its wrongful acts. And the plaintiff must show in this case that the injury complained of is the legal and natural consequence of the wrongful act imputed to the defendant. 2 Id., 454; Sedg. Dam., 84. If the plaintiff's negligence in *any way concurred* in causing the injury the plaintiff cannot recover; and the defendant would not be held to that strict accountability in the case of *intoxicated* persons, that it would be in cases of children, blind or insane persons. Ang. & Ames Corp., § 556; *Brand* v. *The Schenectady and Troy Railroad Company*, 8 Barb., 368; *Haring* v. *The New York and Erie Railroad Company*, 13 Id., 9; Pierce Am. R. R. Law, 277; *Willetts* v. *The Buffalo and Rochester Railroad Company*, 14 Id., 585; Redf. Rail., § 152; *Hartfield* v. *Rosser*, 21 Wend., 615.

*Wm. B. Leffingwell* for the appellee.

1. This action is brought to recover from defendant for damages sustained by James Rogus, in consequence of his being forcibly and wrongfully ejected from the defendant's cars, when he was not of sound mind, of which the defendant had full knowledge; and also for personal injuries inflicted upon him by defendant in expelling him from said cars, by reason of which injuries and his unsoundness of mind he was rendered incapable of taking proper care of himself, and in which condition he was left in a dangerous and exposed position on the track of defendant's

road, where he was shortly after killed by being run over by a train of defendant's cars. Pierce Am. Rail. Law, 282; Redf. Rail., 340; *Willetts* v. *The Buffalo & Rochester Railroad Company*, 14 Barb., 589.

2. Negligence is a question of fact for the jury. Ang. Corp., § 27; Pierce Am. Rail. Law, 282.

Lowe, Ch. J. — Was there error in overruling the above motion for a new trial? The settlement of this inquiry involves the consideration of two questions. First, whether the verdict of the jury was manifestly against the preponderance of the evidence; and secondly, whether it was contrary to law, being either against the same as propounded by the court, or in pursuance of instructions erroneously given.

In considering the first of these propositions, we assume that if the complaint in its form and essence, as set forth in the petition, be not true, that then in law the plaintiff is not entitled to recover.

What then do we understand the charge in its substance to be? In our preliminary statement of the case we have already set it out as concisely, perhaps, as it can very well be done. In support of it the plaintiff called and examined four witnesses. The defendant, three against it. We will first state the facts about which there is no disagreement among the witnesses on either side, namely:

That James Rogus, the party killed, got upon the cars going east, at DeWitt, after dark; that he was very drunk; that he did not pay his fare when demanded by the conductor; that for this reason, and not because he was disturbing the passengers by his noise and profanity, he was forcibly thrown out or dragged from the cars at the next station, called Ramessa, at the usual depot; that the depot platform was low, about on a level with the rails

on the road and near the same; that the night was foggy, very dark, drizzling a little rain; that there were but three houses at Ramessa; the nearest was one hundred yards, and the farthest one hundred rods distant from the depot; that no lights could be seen in either; that Ramessa was a flag station, at which the train usually halted only when signaled; at this station, near the track, Rogus was left, in the dark, unattended and alone. Next morning his body was found on the track, nearly a half mile east of the depot, badly mangled, and as it lay east of where blood and bones were discovered upon the track, it was believed that he was killed by a locomotive going east. As to these facts no question is made, but in addition to them, the plaintiff to support the case made in his petition, must show that Rogus, at the time of his forcible expulsion from the cars, was roughly treated, and injured thereby, and in other respects was in a state of mind from intoxication, which rendered him incapable of exercising any care of himself, and thus situated was left in an exposed position, &c.

Upon these points the plaintiff introduced four witnesses: First. The plaintiff himself, who only testified that he lives at Ramessa; was the administrator of Rogus, who was killed by a locomotive; and that Rogus left a wife and two children. The next was Andrew J. Brosell, a passenger, who knew Rogus; observed his condition, and witnessed the manner in which he was thrust from the cars; and he says that he was very drunk; that he knew nothing at all; that he sat on his seat with his mouth open, snoring; that he paid no attention to the conductor when asked for the fare, nor when he was shaken by the conductor; yet when the conductor said, if you do not pay me on my return I will put you off, Rogus asked, what is it? he replied, eighty cents; Rogus said he would pay him sixty cents. On his return, failing to get the fare on demand, he caught Rogus with

both hands, by the face or head, and dragged him to the floor; Rogus fell like a dead man, with his head against the stanchion of the door; he was then dragged by two men out of and from the car. Before he left the car, however, he offered to pay the fare.

Laura Abbott, a passenger, left the cars at Ramessa, near which she resided. She also had occasion to observe Rogus; he was much in liquor. When she stepped from the cars, Rogus was thrown or lodged at her feet, head foremost.

Henry Pillram, station agent, resided at Ramessa; first saw Rogus when put off, about ten o'clock at night; he was so drunk that he could but just stand; two men laid him on the ground; no direction was given witness what to do with him; he was left alone on the platform, two feet from the railway track; it was so dark that the head light of the cars could not be seen more than forty or fifty rods.

The testimony for the defense, so far as it differs from the foregoing facts, is as follows: Raymond, the conductor, says that it was for the non-payment of the fare alone that Rogus was put off; that in doing so he did not seize him by his whiskers or the side of his face, but by his collar; gave him a jerk and he fell on his face and head near the door; he directed the baggageman (Thurston) to put him off; he was assisted by one Cunningham, who was not an employé of the road; they laid him on the platform; when off, Rogus said, John, let me ride, I'll pay you; this was the first offer he made to pay; he did not offer to pay sixty cents or any other amount in the cars; his expulsion was according to the rules of the company, &c.

The witness, Thurston, was at the brakes; was told by conductor to put Rogus off; he did so; helped him down as gently as he could; he did not go off head first; nor was he hurt; Cunningham took him by the shoulders and arms and laid him carefully upon the platform. In this

Haley v. The Chicago and North Western Railway Co.

statement, the testimony of Cunningham substantially agrees.

In his second examination Raymond, the conductor, said: Rogus had long whiskers; made no noise; was very drunk, so much so that he did not appear to know anything; that when he pulled him off his seat he fell harder than he intended; he might have been hurt some, but such was not his intention; the next train we met was at Camanche going west; the next eastern train should have gone by during the night, but don't remember at what hour.

Such is the testimony. Now the gist of the plaintiff's case is, not that Rogus was cruelly and harshly treated,
1. TORTS: negligence: proximate results. nor yet that the defendant had no right, under the circumstances, to displace Rogus from the cars, but that such displacement was effected under circumstances and at a time when he was in a condition mentally and physically incapable from intoxication of taking care of himself.

Although the evidence shows that Rogus was forcibly and roughly ejected from the cars, and may have been more or less bruised, yet it falls quite short of showing that he was so physically injured thereby as to render him incapable of exercising due care of himself as the result of such injury, yet, nevertheless, the evidence does show that at that particular time he was extremely intoxicated, so much so that, in the language of two of the witnesses, he seemed to know nothing, and in this condition he was strangely and carelessly left in an exposed, not to say a dangerous position near the railway track (but not on the same as alleged in the petition), about ten o'clock of a very dark night. Now this, without showing more, does not prove the plaintiff's case as made in his petition; for it is also alleged therein "*that, by reason of which, a train of defendant's cars ran over and injured him; that he then and there died.*" To entitle the plaintiff to recover in this case,

Haley v. The Chicago and North Western Railway Co.

the law, as well as this material allegation of the petition, requires him to prove that the killing was the natural or proximate result of the act complained of. If, for instance, in a reasonably short time thereafter, before he could have been supposed to have passed from under the effects of his intoxication, and within a short distance from the place where he was dislodged from the cars, he had been found a mangled corpse on the track, from the passage of the train over him, evidence tending to establish such a state of case would authorize the conclusion, perhaps, that the conduct of defendant in the premises was the necessary and proximate cause of the disaster.

But the evidence shows a different state of case. It proves first, beyond doubt, that the train of cars from which he was ejected did not injure him; that two other distinct trains passed over that part of the railroad track that night, one going west, the other east; that the former passed along about an hour, more or less, after Rogus had been left; the latter, according to a time-table introduced as evidence in the case, about four o'clock and twenty minutes in the morning. It is clear, from the position of the remains of the deceased, and the bloody marks left upon the track, that it was this last train, if any, that ran over Rogus, and that, too, very nearly one-half mile east of the Ramessa depot, where he had been left. Now, it is not pretended that it was the carelessness of the defendant's employés operating the train that ran over Rogus that caused his injury and death; but that if the defendant is responsible at all for the unfortunate occurrence, it must

2. —
instruction.

be for the acts of its servants in expelling Rogus from the cars at Ramessa, and leaving him near the track in a state of intoxication. But he was not killed at or near the place where he was left, nor, so far as the evidence shows, during the time that his sense and reason were suffering an eclipse from the effects

of liquor. According to the evidence he met with his disaster a half mile distant from the place where he was put off, so that there was no necessary connection between the dangerous position in which he was left by defendant's servants, as it is claimed, and the scene or locality of his death. Again, the time when this occurred was some six hours, or more, after his displacement from the cars. Whether his faculties had so far recovered with the power of locomotion, as to enable him to understand the danger of being upon the track while trains of cars were passing at that time, is a question to which the attention of the jury should have been called, and should have been passed upon by them. This remoteness of time and place, when and where the accident took place, from the scene of negligence charged upon the defendant, is what renders the verdict of the jury so unsatisfactory to us, and makes us feel that it is our duty to award a new trial, to the end that justice may be the more nearly attained.

The rules of law applicable to this case, will be found discussed and settled in the case of *The State of Maryland to the use of Mary Couchlon* v. *The Baltimore and Ohio Railroad Company*, reported in May number, 1866, of the American Law Register, together with the authorities there cited, in a note added by Judge REDFIELD. The leading principle here laid down is, that the plaintiff cannot recover for an injury resulting from the negligence of the defendant, if, notwithstanding such negligence, his own want of such care and prudence, or that of the party injured, in any way contributed directly to the injury.

3. — mu-
. tual negli-
gence.

Now, without placing any special stress or emphasis upon Rogus' drunkenness, the result of his own imprudence and a violation of law, or his neglect and refusal to pay his railroad fare, a violation of the rules and regulations of the company, as the remote but primal cause of his death, yet the evidence in this case places him in the

attitude of walking on and along the railway track, upon a dark night, when no amount of vigilance on the part of the defendant could discover him, and in this way was struck and run over. Now, how far his own imprudence and want of care was the proximate, whilst that of the defendant was the remote cause of his death, is a question for the jury. If they should find his injury the result of his own want of care at a time when he was capable of judging,. then the law will not permit a recovery; and this rule will be found to be very happily explicated in the case of *Trow* v. *The Vermont Central Railroad Company*, 24 Vt., 487, in which, among other things, Justice ISHAM remarks, that his investigations lead to the question whether an action can be sustained, when the negligence of the plaintiff and defendant has mutually coöperated in producing the injury for which the action has been brought. On this question, he says, the following rules will be found established by the authorities:

When there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained. In the use of the words, proximate cause, is meant negligence occurring *at the time* the injury happened. In such case no action can be sustained by either for the reason that as there can be no apportionment of damages, there can be no recovery. So, when the negligence of the plaintiff is proximate, and that of the defendant remote, or consisting in some other matter than what occurred at the time of the injury, in such case no action can be sustained, for the reason that the immediate cause was the act of the plaintiff. On the other hand, when the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems to be the settled doctrine in England and in this country, in support of which we are refer

to *Hill* v. *Warren,* 2 Stark., 377 ; *Munroe* v. *Leach,* 7 Metc., 274 ; *Parker* v. *Adams,* 12 Id., 415 ; *Brownell* v. *Flagler,* 5 Hill, 282 ; *Brown* v. *Maxwell,* 6 Id., 592, and others.

Adopting, as we are inclined to do, and applying these principles to the case at bar, we are brought to the con-

4. —— appli- clusion that the verdict of the jury was clearly
cation.      against the law, as well as the facts of the case.

As to the charge of the court to the jury, we remark, that the same was substantially correct so far as it goes, and not unfavorable to the appellant, but it lacked definiteness upon the point we are discussing, namely, the proximate and remote causes of the injury and death of Rogus, and what acts, when proved, would constitute negligence on the part of the plaintiff. Negligence in either party being a mixed question of law and fact, we suppose it to be proper for the court to be somewhat specific in its instructions bearing upon that question. It is not, however, intended to pass any opinion upon the facts adverse to the rights of the plaintiff; they are for the jury, under appropriate instructions. One object in awarding a new trial is, that the questions arising may be once more carefully and intelligently adjudged upon the principles of law herein laid down.

Reversed.

WRIGHT, J., *dissenting.* — It is in effect conceded by the foregoing opinion, that there was no error in the instruc-

5. —— in-   tions given to the jury by the court below.
structions  Indeed appellant's counsel complain of but three
and ver-
dict.       instructions, and no part of the majority opinion
holds these to be erroneous. The case is reversed, however, as I understand, upon the ground that the "charge lacked definiteness," upon the question of "the proximate and remote causes of the injury to Rogus." Or, as the ground is stated in the conclusion, the object in granting

"a new trial is, that the questions arising may be once more carefully and intelligently adjudged upon the principles of law herein laid down."

Now, if I understand the instructions, they do not differ in any one essential particular from the law as stated by the majority. They are full, clear, definite and explicit. The law governing the liability of the company, and its duty toward infants and insane persons, and those like the deceased, in a besotted state of intoxication, is clearly and correctly stated. At least no objection was taken to the law as given on this subject, and no further or explanatory instructions were asked by appellant. Nor does the opinion of the chief justice hold such instructions erroneous. Not only so, but these instructions leave the questions of fact to the jury. That is to say, they are left to determine whether the act of the company's agents was or was not the proximate cause of the injury or death. And it seems to me that all the questions arising have been "once carefully and intelligently adjudged upon principles" fully stated by the court below; principles not in conflict with the opinion of this court, and I can see no reason for "once more" going over the same ground.

That the deceased was very drunk; that he was quite unconscious of all that was passing around him; that he was treated with unnecessary severity and harshness at the time he was expelled from the cars; that he was left alone in a very dark night, in a helpless condition, in a place of great danger, were facts which the jury could very reasonably find from the testimony. That he was killed, and by defendant's engines and cars, is an admitted fact. This occurred, it is true, some hours afterwards, and the train passing over him was another and different one from that from which he was ejected. What his state and condition was at the time of the injury, the testimony does not show If he had been killed near the station where

left, or within a short time thereafter, this verdict would not probably have been disturbed. And yet if the act of the defendant in removing him from the cars, and leaving him in an unconscious state, was the proximate cause of his death, then the liability is just as clear as if it had occurred two minutes afterwards. And this question of fact was, as I think, very perspicuously submitted to the jury by the court below. True, all the law upon the subject of negligence and diligence was not stated. The court might have elaborated more; but whether the jury would have been thereby more enlightened or confused, may well be doubted.

But assume that the instructions, correct as far as given, were "lacking in definiteness;" that the minds of the jury were not called specifically to the point, upon which, according to the opinion of the majority, the case turned, whose fault was it? Not the appellee's certainly. Nor should the appellant complain. No instruction bearing upon this subject was asked and refused. And yet this was the clear duty of counsel. if they would make such a point in this court. This is a rule as old as the existence of this court, to say nothing of other courts. If further instructions are not asked, if there is no objection taken at the time to those given because of indefiniteness, this court ought not, and should not, except in a case of manifest injustice, to interfere. No such case is made here, and hence I am clearly of the opinion that the judgment should be affirmed.

Upon the point here noticed this court has held this language: Where an instruction is given, not erroneous, but which does not *as fully* state the law as it might, if a party fails to ask a desired qualification, he cannot afterwards complain. *Ault* v. *Sloan*, 4 Iowa, 508; *Miller* v. *Bryan*, 3 Id., 58. And, again: "If the court's charge is not sufficiently explicit, the attorney should ask more direct instructions. *McCausland* v. *Cresap*, 3 G. Greene, 161;

and see *Mears* v. *Garretson,* 2 Id., 316; *Coutch & Kinsman* v. *Barton,* Mor., 354. "If, upon any proposition involved, *all* of the law was not stated, this cannot avail the defendant, if that which was given was correct." *State of Iowa* v. *Tweedy,* 11 Iowa, 360.

This rule, thus clearly enunciated, I deem most just and reasonable. To depart from it in every case of apparent hardship, or when I think counsel may not have been as active in the presentation of the real points of their case as its correct determination would seem to demand, is no part of my duty. For their failure they have, doubtless, good and sufficient reasons. Having tried their case on their own basis, voluntarily taken, the consequences thereof are with them, and not with me or the court. And hence I cannot say in the case before us but that counsel may, from a knowledge of all the facts, have wisely preferred to place their defense upon other grounds. If so, I might not say they were wrong, and that another opportunity should be given to try the case more "carefully and intelligently."

I think the judgment should be affirmed.