CHARLES WEIGHTMAN *v.* LOUISVILLE, NEW ORLEANS & TEXAS
RAILWAY CO.

RAILROADS. *Sick passenger. Negligence. Damages.*

A declaration against a railroad company which alleges that plaintiff's
son, being taken seriously ill while from home, was placed on a train of
defendant as a passenger, with a ticket, in charge of the conductor, who,
with full knowledge of his condition and of the necessity of his speed-
ily reaching home, promised to take care of him, and to assist him from
the train if necessary, but that he wholly neglected this; that the youth,
while unconscious, was taken past his destination, and was put off in the
night at a place where there were no accommodations, and where he
remained without attention for forty hours, being finally sent home,
and that, as the result of the neglect and exposure, he shortly after-
wards died, states a good cause of action. *Sevier* v. *Railroad Co.*, 61
Miss., 8, distinguished.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

The declaration in this case alleges that on the eighteenth
day of July, 1892, Noel Weightman, the sixteen-year-old son
of appellant, while from home, was taken very seriously ill,
and was put aboard defendant's train at Arkansas City as a
passenger, destined for Vicksburg, Mississippi, the home of
himself and parents; that the ticket-agent of defendant was
apprised of his condition before the purchase of his ticket,
and that the conductor of the train was so apprised, and was
informed that he was away from home, with no one to ac-
company him; that both the ticket-agent and conductor
were informed that he would not only need attention along
the road, but would also probably have to be carried from the
train when he arrived at Vicksburg; that they were fully in-
formed of all the circumstances, and of the reason why ap-
pellant's son would go home by railroad, and not by boat, it
being deemed important that he should go speedily; that,

with a knowledge of all the facts, he was received as a passenger on the train, with the promise of the conductor to give him the necessary attention along the journey, and to have him carefully assisted from the train at Vicksburg; that when the train reached Vicksburg, young Weightman was unconscious, and hence unable to help himself, and in that state was suffered to remain on the train until it had reached a point about thirty miles south of Vicksburg, where he was put off, about two o'clock at night, at a little station where there were no accommodations; that he was there permitted to remain, without care or attention, for about forty hours, when he was taken back to Vicksburg by the employes of defendant; that, soon after reaching home, he died as a result of the exposure and neglect.

From a judgment sustaining a demurrer to the declaration and dismissing the case, plaintiff appeals.

*George Anderson*, for appellant.

We are free to admit that the case of *Sevier* v. *Railroad Co.*, 61 Miss., 8, on the authority of which the demurrer was sustained, is a very strong one. But we recognize the rule announced in that case, and claim that it does not apply here. Plaintiff's son was accepted as a passenger with full knowledge of his illness, and with the promise on the part of defendant's employes to give him the proper attention. The company received the benefit of his fare, and cannot escape the obligation imposed upon it by the circumstances of the case. Where a railroad company voluntarily accepts a passenger, one whose physical disability is apparent, or is made known to the employes, rendering special assistance necessary, the company is negligent if such assistance is not furnished. 2 Am. & Eng. Enc. L., p. 767, § 37, and authorities cited. This is not inconsistent with the rule announced in the *Sevier case*. It.is entirely in keeping with the intimation of the court in the last paragraph of the opinion.

The railroad company owes a duty even to a trespasser, if

he is discovered in a dangerous place or condition, and must respect his circumstances and avoid doing him unnecessary injury. How much more is this true as to one who is a passenger, received under the circumstances averred in the declaration!

By reason of young Weightman's condition, he was unable to leave the train at Vicksburg, and, when the train left there, he should have been put off at a place where he could have received the attention he then needed. Instead of this, he was put off at a place where there were no accommodations, and where he received no care or attention. After about forty hours of exposure and neglect, the employes of defendant, fearing that he would die on their hands, sent him back to Vicksburg. Certainly the company cannot escape liability for such conduct.

*Mayes & Harris*, for appellee.

This case is completely covered by the decision in *Sevier* v. *Railroad Co.*, 61 Miss., 8. The authorities relied on by opposite counsel have no bearing on the principle announced in that case. They merely have reference to the stoppage of trains at stations in order to give passengers sufficient time to alight.

WOODS, J., delivered the opinion of the court.

The case, on its facts presented by the declaration, is widely different from that of *Sevier* v. *Railroad Co.*, 61 Miss., 8. In that case the plaintiff got on a train of the railroad company at Vicksburg, to be transported to Jackson. Before reaching Jackson, the plaintiff, who had gotten on the train while sick with a fever, notified the conductor of the train that he was sick and drowsy, and wished to sleep, but feared he might not awake at Jackson, his point of debarkation. The conductor thereupon told plaintiff that he might safely go to sleep, and that he should be awakened at Jackson. The plaintiff accordingly lay down and slept, and gave no thought

to being awake when the train should reach Jackson, and neither roused himself nor was aroused by the conductor at Jackson, but was carried four miles east of that station while so asleep and sick, when the train was stopped, the plaintiff permitted to get off at night in the woods, and walk back to Jackson.

In the case at bar, the passenger was received into and upon the train by the ticket-agent's and conductor's consent and agreement, after having been informed of his serious illness and his inability to care for himself, and of the necessity there would be, on the railroad's part, to have him assisted from the car when the train should arrive at Vicksburg, the place of his debarkation. The declaration alleges that the passenger, "being violently ill, was overcome by weakness, drowsiness, and unconsciousness to such an extent that when the train upon which he was a passenger arrived at Vicksburg, he was totally unconscious thereof;" that the conductor negligently failed to have the passenger awakened and put off, but permitted him to remain on the train, without any attention or care given him, and carried him to a small station, called Ingleside, about thirty miles south of Vicksburg, where he was put off the train, about 2 o'clock at night, where there was no one to take care of him, or to protect him in his then condition, and he was permitted to remain in the depot at Ingleside, without care or attention, from 2 A.M. Tuesday to 5 P.M. on the Wednesday following— about forty hours—when he was placed upon a north-bound train of defendant's, and carried back to Vicksburg; that on thus reaching the house of his father at Vicksburg, medical aid was at once summoned, but it was found to be too late, and he was pronounced to be beyond hope of recovery, and very soon thereafter died. It is also alleged that, by reason of his having no care and attention during the forty hours he was left at the station-house at Ingleside, he grew very much worse, and that death would not have occurred but for the negligent, wanton and reckless conduct of defendant.

How wide the limits stand between the one case and the other—the case of Sevier and the case of Weightman—the preceding brief statements of fact will vividly make to appear. In the one case, a man, not sick enough to make his condition known before or on entering the train, takes passage, and, before reaching his destination (the whole trip a short one of about forty miles only), tells the conductor that he has fever and is drowsy, and wants to sleep, and secures the conductor's promise to rouse him at Jackson. The conductor — under no sort of obligation, contractual or otherwise, to keep his promise—forgets the passenger until four miles out from Jackson, when he permits the passenger to leave the train and return to his destination. In the other case—the one at bar—the passenger is received into and upon the train after his sick and helpless condition had been made known to the ticket-agent and the conductor, together with the reasons for desiring to have him carried by rail rather than by steamer, and the necessity for the attention of the railway employes on his journey and in his removal from the train at Vicksburg, his point of debarkation, and after their agreement to give him needed care on the way, and to have him carried from the train. He is not cared for or carried from the train, though unconscious at the time, but is carried thirty miles further south, and put off at 2 o'clock A.M. in a little way-side depot, with no one to care for him, and is permitted there to remain, without care or attention, until nearly forty hours later, when he is carried back to Vicksburg to die.

That the wanton, reckless, inhuman conduct of the defendant in putting an almost dying man from its train, under the revolting circumstances set out in the declaration in this case creates liability on the wrong-doer's part, we do not hesitate to affirm. It was the wanton exposure to almost certain death by the railroad company of one not a trespasser —a passenger, to whom it owed a duty; at least the duty which common humanity proclaims, and which the general

law of civilized Christendom echoes, not to wantonly or recklessly injure another.    Trespassers on trains and tracks, wrong-doers and swindling dead-beats, may not be wilfully or wantonly injured, or subjected to imminent risks of deadly peril.    This humane doctrine is imbedded in our laws; it is rooted in all laws of every enlightened kingdom or commonwealth under the wide circuit of the sun.

Is authority thought to be needful to support so plain and just a rule of conduct?  They are at hand, and abundant. Says Beach, in his admirable little compendium of The Law of Railways: "A railway company must treat such of its passengers as are sick or infirm with humanity and consideration."    In the case of *Conolly* v. *Railroad Co.*, 41 La. Ann., 57, this rule is declared with emphasis.    In the syllabus, which Fenner, J., who delivered the opinion of the court, approves, it is said: "Although a common carrier of passengers owes obligations to its well passengers as well as to those who are sick, and is bound to protect the rights of both, and, although, when the condition of one passenger, from sickness or otherwise, is such as to be inconsistent with the safety, health or even comfort of his fellow-passengers, regard for the rights of the latter will authorize the carrier to terminate the carriage by excluding him; yet, this right cannot be exercised arbitrarily or inhumanly, or without due care and provision for the safety and well-being of the ejected passenger."    In this case, the ejected passenger had fallen, helpless and almost insensible, to the floor of the car, vomiting severely.    His condition was offensive to other passengers. Thinking him drunk, the car-driver, with the help of a passenger, removed Conolly from the car and laid him down in the open street, where he remained for four hours, on a bleak day in December, and was at length removed by the police authorities to the hospital, where he died the next day.    Miserable as is this case on its facts, how far short of the reckless and wanton disregard of all laws displayed in the case at bar does it fall!

In delivering the opinion of the court in the case of *Railroad Co.* v. *Sullivan*, 81 Ky., 624, where it appeared that Sullivan was drunk, and unable or unwilling to pay his fare, and was ejected by the conductor, and exposed to freezing weather, while in a helpless condition, whereby his toes, some of his fingers and part of his heel were frozen, and necessitated their amputation, Lewis, J., said: " The right, generally, of railroad companies to put off their trains persons who refuse to pay their fare when requested by the conductor, may be conceded, but does it follow that this right may be exercised in such manner, under such circumstances or against a person in such mental or physical condition as that death or serious bodily harm will necessarily, or even probably, result from putting him off? It is true that appellee, by refusing to pay his fare, became, technically, a trespasser, but it is well settled that a party may, in some cases, recover for the gross negligence of another, notwithstanding he may have been a trespasser upon the rights of the other at the time he received the injury." See, too, the cases cited by the learned judge in his opinion. To the same effect will be found *Railroad Co.* v. *Moore*, 83 Va., 827; *Railroad Co.* v. *Weber, Adm'r*, 33 Kas., 543; *Railway Co.* v. *Powell, Adm'r*, 40 Ind., 37; *Haley, Adm'r*, v. *Railway Co.*, 21 Iowa, 15; *Railway Co.* v. *Miller*, 19 Mich., 305.

*Judgment of court below reversed, demurrer overruled and case remanded for further proceedings.*