ILLINOIS CENTRAL RAILROAD COMPANY v. JOHN H. SMITH.

RAILROADS. *Passengers. Blind person. Apparent incapacity. Actual capacity. Duty of ticket agent. Arbitrary refusal to carry. Damages.*

Where a blind person presents himself to a railroad ticket agent and offers to purchase a ticket entitling him to travel on the company's train:

(*a*) Its sale may be denied him if he be unable to care for himself or liable to require extra attention from the carrier or the passengers; but

(*b*) Where a person seemingly disabled is in fact, to the knowledge of the carrier, able to travel alone, without requiring extra care or attention, transportation must be furnished him; and

(*c*) It is the duty of the agent to listen to explanations made by and in behalf of the applicant touching his experience and capacity to travel alone, and to judge of his competency in the light of the facts then made known; and

(*d*) If the carrier, with knowledge or reasonable ground to believe that the applicant is in fact able to travel alone, without requiring extra care or attention, arbitrarily, willfully, wantonly, wrongfully, and unreasonably deny him transportation, the carrier will be liable to him for compensatory damages and, in the discretion of the jury, to punitive damages; and

(*e*) The reasonableness or unreasonableness of an agent's refusal to sell him a ticket, after explanation of his ability to travel alone, is a question for the jury to determine.

FROM the circuit court of Attala county.

HON. WILLIAM F. STEVENS, Judge.

Smith, the appellee, was plaintiff, and the railroad company, appellant, defendant in the court below. From a judgment in plaintiff's favor for $575 and costs, the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellant.

Since the final decision in the case of *Zachary* v. *Railroad Co.,* 75 Miss., 752, the law of this state is that a blind person, familiar with travel and its conditions, and well qualified to take care of himself, being in possession of all his faculties and strength, save the one infirmity of blindness, cannot, on the sole ground of blindness, be denied transportation on a railroad train. The rule of the railroad company providing in this case that a person suffering from physical infirmities, or in any wise disabled, should be accompanied by an escort to give him attention and care, is a reasonable one, as this honorable court has practically declared in the two opinions in the Zachary cases, and it is only when the person with the infirmity brings himself within the exception, it is only when the person under disability proves that he is entitled to travel on the train unaccompanied, that he is entitled to transportation.

The court will observe that transportation was not refused to this plaintiff, and that, notwithstanding the refusal of the agent to sell him a ticket, quick and convenient transportation was still open to him at the time and on the day of this occurrence.

Ordinarily the refusal of a ticket agent to sell a prospective passenger a ticket might be treated as a practical refusal of transportation, and while this construction would be justified with one unfamiliar with conditions and unadvised as to the custom and usage of the company, yet in this instance Mr. Smith well knew that he could travel on the local passenger train without a ticket; that he would not be required to exhibit a ticket in order to obtain admission to the train or transportation on it; and he states that many times he had used that train without having purchased tickets for transportation. He, therefore, was not justified in standing on the technical refusal of the station agent to let him have a ticket. The burden of proof was on him to do all he could to reduce his damages and to save himself from inconvenience, and by merely embarking on

the local passenger train he could have gone to Durant with a loss of only thirty minutes.

Mr. Smith was not entitled, on the facts of this case, to recover punitive damages. It is not contended that the rule of the company requiring people under an infirmity to have an escort is unreasonable; in fact, this honorable court in the Zachary cases has declared practically that the rule is not improper, and that in many instances its application would be rightful. But they make exceptions to the rule, and say that in each instance a case coming within the exception must stand on its own circumstances. In other words, the rule is reasonable and proper, and imposes *prima facie* a disability on the passenger who applies for the ticket, and shifts the burden to him to demonstrate that he is qualified to travel unattended, even though he may assure the station agent that he is. After all, the station agent would have nothing but his mere word to be guided by, and we insist that a mistake of judgment on the part of a station agent in obeying his duty to conform to the rules and regulations of the company, and especially to a regulation reasonable and justly imposable in many cases, such as was the rule obeyed by the station agent in this instance—that the action of an agent doing this lacks entirely that element of wanton or malicious wrong or reckless indifference to the rights of the passenger as would warrant the imposition of punitive damages.

That this verdict, except to an infinitesimal amount, is for punitive damages is shown by the fact that the plaintiff, as a witness, in stating his actual damages, says: "I estimate my actual loss of time and money by refusal of defendant company to sell me a ticket at Winona, as above stated, at $25 or $30."

Certainly there is no room for punitive damages in this case, where there was no insult, and only observance in good faith of a reasonable regulation, and when the person aggrieved knew that the declination of the agent did not prohibit him from enjoying the privilege of transportation.

The court below refused instruction No. 7 requested by the defendant, which told the jury that they should allow only actual damages on the facts. The instructions granted plaintiff in this case were in many respects erroneous, and, taken as a whole, did not properly state the law.

*Teat & Teat,* for appellee.

"A common carrier of passengers cannot refuse to carry a person otherwise qualified upon the sole ground that he is blind; and a rule of the carrier forbidding the transportation of all unattended blind persons is unreasonable in its application to such a person who is competent to travel alone and take care of himself." *Zachary* v. *Railroad Co.,* 75 Miss., 746.

The court admitted, of course, that instances might arise in which a carrier might be warranted in refusing to sell a blind person a ticket, just as it might be warranted or not warranted in doing or not doing any other thing. The question of the reasonableness of the rule denying transportation to the unattended blind was settled. It was declared to be unsound, inapplicable, and unreasonable; and the question of whether or not a blind person was to be allowed to travel on the cars was by the court declared to be not a proper subject to be regulated by a rule at all, but the railroad company was put on notice that it was required to deal with all blind persons applying for transportation strictly in the individual capacity, and not in any instance regarding the issuance or refusal of transportation are they to be dealt with as a class nor proscribed against by any rule.

If this is the true interpretation of the opinion of the court, then there is no rule against the sale of tickets to blind people recognized by the court; and when a blind person applies to a ticket agent for a ticket, the natural and legal presumption is that he is entitled to it, just as other people are, because blindness, *ipso facto,* is no disqualification, and the law imposes a general duty upon all common carriers of passengers to carry

all intending passengers; and if the railroad company does not sell an intending passenger a ticket for any reason, or if it refuses to sell such intending passenger a ticket for any reason whatever, it certainly assumes the burden of showing that he is not entitled to it.

In the case at bar there is much proof that the plaintiff was clearly qualified to travel on the appellant's cars. Many disinterested witnesses and officers of the county testified that he could travel and take care of himself almost as well as any person possessed of sight. Other proof shows that he had been a student for many years at the state institution for the blind at Jackson, Mississippi, and had attained a high degree of skill in the art of locomotion. This evidence in the record, coupled with the verdict below settling the fact that he was qualified to take care of himself, clearly settles his right of recovery.

Smith was entitled on the facts of this case to recover punitive damages for two reasons. Because the conduct of the agent toward the plaintiff was personally offensive, discourteous, and insulting in this: That after repeated efforts on part of the plaintiff to obtain a ticket and to show him his order book and to make full and reasonable explanation to the agent that he was entitled to a ticket and transportation, the agent declined to hear him, and after various curt and disrespectful remarks ordered the plaintiff in rough and angry tones to stand out of the way, that there were other parties who desired to purchase tickets, thus discriminating against him in favor of other passengers who had no more right than he, and after this the agent treated him so contemptuously as not to answer his inquiries. The plaintiff was unable so much as to gain his attention, although he was there in a public office where it was the agents duty to treat all persons courteously and politely, to hear their explanations and answer their honest inquiries.

The arbitrary enforcement of the pretended rule against this plaintiff denying him the right of transportation when he was

clearly entitled to it, which fact was known to the agent and the appellant company (and since the decisions in the Zachary cases, too), was willful, high-handed, and in utter disregard of his rights, and is ground of itself warranting the infliction of punitive damages.

TRULY, J., delivered the opinion of the court.

Appellee, a minor, eighteen years of age, desiring to travel from Winona to Durant, in this state, applied to the agent of appellant to purchase a ticket, tendering proper fare. This was refused him on the ground that he was blind and unaccompanied by an assistant, and, under an existing rule of the railroad company, was not entitled to transportation. Appellee claimed that he was an experienced traveler, able to care for himself and needing no assistance. He offered to produce his order book to show that he was in the habit of traveling and booking orders for goods, but the agent persisted in his refusal. Thereby appellee was forced to change his route and travel over another railway. He brought suit against appellant, claiming both actual and punitive damages. The actual damage proven was small. The jury awarded punitive damages under the instructions of the court, and the Illinois Central Railroad Company appealed.

Several instructions were granted appellee, embodying the same general idea. The first and fifth will sufficiently illustrate the main propositions presented for consideration. They are as follows:

"No. 1. The court instructs the jury that if they believe that the plaintiff, J. H. Smith, on the 19th day of January, 1903, applied to the defendant's ticket agent at Winona, Mississippi, at the proper time and place and in the proper manner, for the purchase of a railroad ticket from Winona, Mississippi, to Durant, Mississippi, then and there tendering the requisite amount of cash fare, as alleged in the plaintiff's declaration, and that said agent then and there refused to sell

plaintiff a ticket as requested for no other reason than that the plaintiff was blind, and that the plaintiff, although blind, was in fact otherwise qualified to travel, the defendant is guilty of a wrong, and they should find for the plaintiff, and assess his damages at such sum as they may think proper from all the evidence, not exceeding the sum sued for—to wit, $1,500.

"No. 5. The court instructs the jury, for the plaintiff, that a common carrier of passengers cannot refuse to carry a person, otherwise qualified, upon the sole ground that he is blind; and if a common carrier willfully refuses so to do, it is liable for punitive damages."

The general rule in force in this state is that which is embodied in the text and accurately stated in 5 Am. & Eng. Ency. Law, p. 538, note 4: "While persons who are ill have a right to enter and travel upon the conveyances of a common carrier of passengers, nevertheless the carrier is not bound to accept as a passenger, without an attendant, one who, because of physical or mental disability, is unable to take care of himself; but should the carrier voluntarily accept as a passenger such a person without an attendant, his inability to care for himself, rendering special care and assistance necessary, being apparent or made known at the time of his application for carriage to the servants of the carrier, the latter will be held responsible if such care and assistance are not afforded." See also *Weightman* v. *Railroad,* 70 Miss., 563 (12 South. Rep., 586; 19 L. R. A., 671; 35 Am. St. Rep., 660); *Sevier* v. *Railroad,* 61 Miss., 8 (48 Am. St. Rep., 74); *Railroad* v. *Stathan,* 42 Miss., 607 (97 Am. Dec., 478). This rule recognizes the authority of the carrier to exclude and deny transportation to any person desiring passage who, on account of physical or mental disability, is unable to care for himself, or liable on account of that incapacity to become a burden upon his fellow-passengers or to require extra attention from the carrier. But inasmuch as experience has shown that many persons seemingly incapacitated by physical disability are in truth perfectly competent to

travel alone, the courts, in the interest of the traveling public, have modified the rigor and limited the otherwise universal application of the rule by providing that any person desiring transportation shall be entitled to passage upon payment of fare, notwithstanding his seeming incapacity, if, as a matter of fact, he be competent to travel alone without requiring other care than that which the law requires the carrier to bestow upon all its passengers alike; and if this proof of capacity be in any manner brought to the knowledge of the agent of the carrier, the carrier is liable in damages for any exclusion from its trains. This is the evident meaning of the opinion of this court in the case of *Zachary* v. *Railroad,* 75 Miss., 751 (23 South. Rep., 435; 41 L. R. A., 385; 65 Am. St. Rep., 617), where, through Whitfield, Justice, it is said: "Each case must depend on its own facts, and the reasonableness of the refusal to sell a blind person a ticket must on principle depend not on a universal, arbitrary, and undiscriminating rule like this one, but on the capacity to travel, unaccompanied, of the particular blind person, as shown by the proof on that point in his case." Primarily the affliction of blindness unfits every person for safe travel by railway, if unaccompanied. No blind person without previous experience could possibly accommodate himself to the many exigencies incident to travel by railroad, or guard himself against peril in boarding and alighting from trains, changing from one train to another, or threading his way in safety across the railway tracks at crowded stations. Hence the rule which provides that every blind person is presumed to be, in the absence of proof of experience, unfit to travel alone, is not unreasonable. Nor do we consider such a regulation a hardship upon the persons afflicted with blindness or other disabling physical infirmity. It is rather a safeguard thrown around them for their own protection. Therefore, when a blind person applies to purchase a ticket, being himself unknown to the agent, and that ticket is refused, the carrier is not liable by this act alone to be mulcted in damages; but, as before

indicated, if the agent of the carrier knows of his personal knowledge of the competency to travel of the particular person, or if the fact of such ability is made known to him in any manner, and he still persists wantonly and arbitrarily in his refusal to sell the person desiring passage a ticket, the carrier may be made to respond in damages for his oppressive act. And it is the duty of the agent of the carrier to listen to the explanation made by the person desiring to purchase a ticket, and judge of his competency in the light of the facts then made known to him, and the question of the reasonableness or unreasonableness of his refusal is one of fact to be submitted to the jury, should litigation arise; and if it should appear that such refusal was reasonable under the circumstances, as they then existed to the knowledge of the agent, the carrier would not be liable to damages; but, as in every other case, if it should develop that his action was caused by wantonness or a desire to arbitrarily injure, humiliate, or oppress the proposed passenger by such action, the carrier would be responsible, and would be liable both to compensatory and punitive damages. In the instant case it will be observed that the first instruction set out above told the jury that if they believed the agent refused to sell plaintiff a ticket on the sole ground that he was blind, and that if they further believed that the plaintiff, "although blind, was in fact otherwise qualified to travel," then, these two facts being established, the railroad was convicted of a wrong, and the jury was authorized to find for plaintiff, and to assess his damages "at such sum as they may think proper from all the evidence, not exceeding the sum sued for." An inspection of the record shows that there was no dispute as to the fact that the agent's refusal to sell appellee a ticket was "for no other reason than that the plaintiff was blind;" so the first instruction in effect directed the jury to inflict such damages as they thought proper, from the evidence, upon the railroad company, if they, the jury, believed that the plaintiff, although blind, "was otherwise qualified to travel."

The fifth instruction was to the effect that if a common carrier willfully refused to carry a person otherwise qualified, on the sole ground that he is blind, it was "liable for punitive damages." Both instructions are erroneous for want of the same limitation—*i. e.,* that the agent of the railroad knew, or had reasonable grounds to believe, or from circumstances within his knowledge ought to have known, that the person demanding transportation, although blind, was otherwise qualified to travel. The infliction of punitive damages is authorized where an employe of a carrier knowingly and wantonly refuses to do some act which his duty requires that he shall perform, and is not properly predicable of a fact unless proof of its existence is brought to the knowledge of the acting party. In this case, under the general rule hereinbefore announced, when the appellee demanded the right to purchase a ticket and become a passenger, while unattended by an assistant, the agent was acting within the scope of a reasonable regulation, designed for the protection of all persons suffering from disabling physical infirmities, when he refused to sell the ticket, and the fact, if fact it was, that appellee was in truth qualified to travel alone, unless brought to the knowledge of the agent, placed no additional liability upon the appellant. No matter how thoroughly competent appellee may have been to travel unattended or how extensive his traveling experience, unless the agent either knew, or from circumstances of which he had notice ought to have known, of this competency and previous experience, the mere existence of these facts could not in any way impute wrongfulness to an act committed in ignorance of them. If the agent of a railroad company refuses wantonly and arbitrarily to sell a ticket to a blind man, knowing at the time that such person is a thoroughly competent traveler, then the carrier would be liable to punitive damages, and the mere fact of blindness, and the apparent existence of a disability which the agent knew was only apparent and not actual, would not excuse or justify the oppressive act. But the two instructions under

review ignore this vital element, and authorize the jury to inflict punitive damages upon the appellant for the commission of an act by its employe when, so far as the instructions show, the employe may not have known of the existence of the very fact which rendered his action in refusing the ticket wrong, if wrong it was.

As the case must be remanded for a new trial, we refrain from any comment upon the testimony as to whether the evidence proved that the appellee was competent to travel alone or whether the facts made known to the agent of the appellant were such as should have led him to infer such competency on the part of appellee.

*Reversed, and remanded for a new trial.*