ROBERT CROOM *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

Argued Jan. 3, 1893.	Decided Jan. 20, 1893.

**Carriers of Passengers—Their Duty to Feeble and Infirm.**

/ A railway company is not bound to accept as a passenger on its cars, without an attendant, one who, because of physical or mental disability, is unable to take care of himself; but if it voluntarily accepts such a person as a passenger without an attendant, his inability to care for himself, rendering special care and assistance necessary, being apparent, or made known at the time to its servants, the company is negligent if such care and assistance is not afforded. / The degree of care to be exercised in such a case is that which is reasonably necessary for the safety of the passenger, in view of his mental and physical condition.

**Degree of Care Exercised.**

Whether the defendant exercised such a degree of care in this case was, under the evidence, a question for the jury.

**Pleading.**

A pleading construed.

Appeal by defendant the Chicago, Milwaukee & St. Paul Railway Company from an order of the District Court of Freeborn County, *Buckham*, J., made August 18, 1892, denying it a new trial.

*H. H. Field* and *W. E. Todd*, for appellant.

*Lovely & Morgan*, for respondent.

MITCHELL, J.	The defendant accepted the plaintiff as a passenger on its train for transportation from Savannah, Ill., by way of Austin, Minn., to Wells, in this state.

He was aged eighty years, feeble, and infirm in mind and body, and hence required special care and assistance during his journey, of which fact the defendant was informed when it accepted him as a passenger by a letter from its station agent at Savannah, which accompanied his ticket, and was exhibited to each successive conductor on the train. The train reached Austin before daylight, about 4 o'clock in the morning. At that point it was necessary for plaintiff to change cars, and take a train going west to Wells. The

two trains, on arrival at Austin, stood head to head on the same track alongside of the depot platform.   When plaintiff's train arrived, an employe of defendant called to passengers going west to change cars, but no one assisted plaintiff to get off the one train, or to find his way to the other.   Owing to his age and to his being incumbered with some luggage, the old man was the last person to get off the train, and by the time he did so all the other passengers had gotten out of sight.   Although the depot platform was lighted by some oil lamps, yet it was somewhat dark, and the plaintiff, being in a strange place, under such circumstances was evidently dazed, and unable to decide where to go or what to do.   He says he kept "hunting round" without success to find his train and the other passengers, until finally he saw a man with a lantern, and asked him where he should go, and that the man told him "to go up the steps," referring or directing him to what proved to be the steps up onto the platform of a coach on the west-bound train, and that the man hurried off, without giving him any assistance; that he, (plaintiff,) unaided, succeeded in getting up on the platform on the coach.   On the other hand, one of defendant's employes testified that he saw the plaintiff on the station platform, tottering along as if he needed assistance, and that, after ascertaining his destination, helped him up onto the platform of the coach, and then left, supposing he would go into the car.   The jury were at liberty to accept as true whichever statement they thought most credible.

The plaintiff, however, in his dazed condition, apparently mistook the platform of the car for something else, and instead of entering the car walked off in the dark, and fell to the ground on the opposite side of the train, and near to another track, which was from four to six feet distant from the one on which the train stood, and sustained severe injuries.   Defendant's yard foreman, who was superintending the switching of a car onto that track, stood within about eight feet, and saw plaintiff fall, but, assuming apparently that he was not seriously hurt, and not in a place of danger, the foreman, without rendering any assistance, started off a distance of some fifty feet to open a switch to let the car and switch engine in onto that track.   A switchman, who was riding on the footboard of

the engine, as it approached, seeing plaintiff lying there in a place of danger, jumped off, and picked him up. He testified that he did not know whether the engine "rubbed against" plaintiff or not, but the jury would have been justified in finding from the testimony of plaintiff himself that the engine came in contact with him as he was lying there along the track, and inflicted on him injuries in addition to those received by the fall.

Defendant's assignments of error are all directed to two points: *First,* that there was no evidence to justify a verdict that defendant was guilty of any negligence; *second,* that the court erred in giving plaintiff's ninth request, which was to the effect that, if defendant's yard foreman saw plaintiff in a place of peril, and was in a position to protect him from injury, and failed to do so, and thereby the plaintiff received additional injuries, then, for all such injuries resulting from the foreman's failure to perform his duty, the defendant would be liable.

I. Taking up these points in the order named, we are of opinion that, under all the circumstances disclosed by the evidence, it was a question for the jury whether defendant's servants exercised proper care in directing and assisting the plaintiff from the incoming to the outgoing west-bound train. Of course, a railroad company is not bound to turn its cars into nurseries or hospitals, or its employes into nurses. If a passenger, because of extreme youth or old age, or any mental or physical infirmities, is unable to take care of himself, he ought to be provided with an attendant to take care of him. But if the company voluntarily accepts a person as a passenger, without an attendant, whose inability to care for himself is apparent or made known to its servants, and renders special care and assistance necessary, the company is negligent if such assistance is not afforded. In such case it must exercise the degree of care commensurate with the responsibility which it has thus voluntarily assumed, and that care must be such as is reasonably necessary to insure the safety of the passenger, in view of his mental and physical condition. This is a duty required by law as well as the dictates of humanity. *Indianapolis, P. & C. R. Co.* v. *Pitzer,* 109 Ind. 179, (6 N. E. Rep. 310,) and (10 N. E. Rep. 70;) *Sheridan* v. *Brooklyn & N. R. Co.,* 36 N.

Y. 39. Whether the defendant fully performed this duty was a question for the jury.

II. There was evidence making the instruction complained of applicable to the case, and it was properly given if the matter referred to was within the allegations of the complaint. The 3d, 4th, and 5th paragraphs of the complaint, respectively, charge three distinct and separate acts of negligence: *First,* omission to properly light the station platform; *second,* failure to render plaintiff proper directions and assistance in going to and boarding his train; and, *third,* (as alleged in the fifth paragraph,) "that said plaintiff was then and there, [while lying on the ground after he fell,] by and through the negligence of said defendant, run upon and against by one of its locomotive engines," whereby he sustained injuries. We are of opinion that the negligence here alleged must be construed as a separate charge, additional to those which preceded, and does not, as defendant claims, merely refer to allegations of negligence contained in preceding paragraphs. We may add that it would seem that the parties, in the introduction of evidence on the trial, construed it that way.

Order affirmed.

COLLINS, J., absent, took no part.

(Opinion published 53 N. W. Rep. 1128.)