FURGASON *v.* THE CITIZENS' STREET RAILWAY COMPANY OF INDIANAPOLIS.

[No. 2,078.   Filed October 13, 1896.]

CARRIERS.—*Street Railway.—Injury to Passenger.*—A street railway company is not liable for injury to a passenger able to travel upon the cars without the aid of an attendant, where the injury is caused by other passengers jostling and pushing her, and one passenger stepping upon her dress as she was alighting, where it is shown that the conductor was at the time upon the ground assisting a child in her care to alight.

From the Marion Superior Court. *Affirmed.*

*J. M. Manker* and *Pierce Norton,* for appellant.

*A. L. Mason* and *W. H. Latta,* for appellee.

Ross, J.—The appellant sued to recover damages for personal injuries alleged to have been received while a passenger of appellee company. On a trial of the cause a special verdict was returned by the jury, upon which the court rendered judgment in favor of the appellee.

The special verdict found by the jury is as follows:

"We, the jury, return the following answers to the interrogatories and special verdict herein:

1. Did the defendant own and operate a street railway in the City of Indianapolis and its suburb, West Indianapolis, on the 29th day of November, 1894?
Ans. Yes.

2. Was not said defendant on the 29th day of November, 1894, a common carrier of passengers for hire in the City of Indianapolis and in the town of West Indianapolis, Marion county, Indiana?
Ans. Yes.

3. Did the plaintiff, on the 29th day of November, 1894, get upon one of said defendant's cars as a passenger to be carried from Shelby street in the City of Indianapolis to Edward street, in the town of West Indianapolis?
Ans. Yes.

4. Was not the regular and customary fare to be paid for such passage five cents?
Ans. Yes.

5. Did plaintiff pay to said defendant the sum of five cents for a passage as a passenger upon its cars between Shelby street in the City of Indianapolis and Edwards street in the town of West Indianapolis?
Ans. Yes.

6. Was defendant's said car and train upon which the plaintiff was riding under the care and control of a conductor, a servant and agent of the defendant?

Ans. Yes.

7. Did plaintiff notify the conductor that she desired to get off and leave the train of the defendant at Edwards street in the town of West Indianapolis?

Ans. Yes.

8. And was not said defendant's conductor so notified by plaintiff some minutes before the car reached said Edwards street?

Ans. Yes.

9. Did the conductor of the defendant fail and refuse to permit the plaintiff to leave the car and train of defendant at Edwards street?

Ans. Yes.

10. Did the defendant's conductor stop said car at Edwards street?

Ans. Yes.

11. Did said car stop sufficient time for the plaintiff to alight therefrom?

Ans. No.

12. Did not plaintiff rise to her feet and notify defendant's conductor at said Edwards street that she desired to get off at that point?

Ans. Yes.

13. Did defendant's conductor refuse to allow plaintiff to get off at said Edwards street?

Ans. Yes.

14. Did not defendant's conductor give the signal for said car to go on before plaintiff had time to alight from said car at Edwards street?

Ans. Yes.

15. Did the defendant carry the plaintiff beyond said Edwards street and to Osgood street, in said town of West Indianapolis?

Ans. Yes.

16. Did the conductor stop said car at Osgood street?

Ans. Yes.

17. From the time the car left Edward street until the car reached Osgood street did not plaintiff stand near the door of said car?

Ans. Yes.

18. Did plaintiff attempt to get off said car at Osgood street?

Ans. Yes.

19. At the time the plaintiff attempted to get off the car at Osgood street, where was defendant's conductor?

Ans. On the street.

20. Was plaintiff crowded and pushed by the passengers on the defendant's car when she was attempting to leave the same?

Ans. Yes.

21. What assistance did the defendant's conductor give the plaintiff when she was attempting to leave the car?

Ans. None.

22. Was the step of the defendant's car slippery from ice or sleet at that time?

Ans. Yes.

23. Did the plaintiff slip on the step of the car at the time she was attempting to alight therefrom?

Ans. No.

24. Did the plaintiff fall to the ground from defendant's car on account of her slipping on its car step?

Ans. No.

25. Was plaintiff injured by reason of said fall?

Ans. Yes.

26. Was not the conductor of the defendant off of

the car at the time the plaintiff attempted to alight therefrom?

Ans. Yes.

27. What prevented the conductor of the defendant from assisting or knowing that the other passengers upon the platform were crowding the plaintiff at the time she was attempting to alight from said car?

Ans. Assisting plaintiff's child.

28. What effort, if any, did the conductor make to prevent the other passengers from crowding and pushing the plaintiff as she was alighting from the car of the defendant?

Ans. None.

29. Under the circumstances was the plaintiff guilty of neglect contributing to her injuries?

Ans. No.

30. What negligent act of plaintiff contributed to her said injuries?

Ans. None.

31. Could the defendant's conductor have prevented the crowding of the plaintiff by other passengers on the car?

Ans. No.

32. Was it raining and freezing at the time she took passage on said car?

Ans. Yes.

33. Did the plaintiff pay her fare as a passenger on said car?

Ans. Yes.

34. Did said car stop for the purpose of allowing plaintiff to alight?

Ans. Yes.

35. If so, where did it stop?

Ans. Osgood street.

36. At what time in the day did it so stop?

Ans. About 6:00 p. m.

37. Did the plaintiff have good reason to believe that the step on said car was icy at that time?

Ans. Yes.

38. Did the plaintiff have good reason to believe that the surface of the street at that place was icy at that time?

Ans. Yes.

39. Was plaintiff's little girl with her as a passenger on said car?

Ans. Yes.

40. When plaintiff was preparing to leave the car did the little girl come first to the step where the plaintiff was to alight?

Ans. Yes.

41. Was the conductor of the car on the ground near the step to assist plaintiff and her little girl to alight from the car?

Ans. Yes.

42. Did the conductor of the car lift the little girl from the platform and place her upon the ground?

Ans. Yes.

43. Did plaintiff fall from the car when attempting to alight?

Ans. Yes.

44. After the conductor had helped the child to the ground did he have time to get hold of the plaintiff before she fell?

Ans. No.

45. Was plaintiff jostled or pushed from behind by another passenger just as she was about to step down upon the step of the car?

Ans. Yes.

46. Was her dress caught and torn by another passenger stepping upon it or placing his cane upon it just as she was about to step down upon the step of said car?

Furgason *v.* Citizens' Street R. W. Co. of Indianapolis.

Ans. Yes.

47. Did the catching or holding of the dress, the push or jostle of the plaintiff by the passenger and the icy step cause her fall?

Ans. Yes.

48. State what caused plaintiff's fall or plaintiff to fall when alighting from the car?

Ans. Jostle, pushing and holding of dress.

49. Did the plaintiff sustain injury by such fall?

Ans. Yes.

50. Was any injury sustained by the fall aggravated in its consequences by plaintiff's failure to procure proper medical treatment?

Ans. Yes.

51. In what amount was the plaintiff damaged by her said injury?

Ans. $500.00.

52. In what amount would she have been damaged if she had obtained proper medical treatment?

Ans. $300.00.

53. Was not the plaintiff at the time she received her said injuries, pregnant and heavy with child?

Ans. Yes.

54. To what extent was plaintiff damaged by her injuries?

Ans. $500.00.

55. Has plaintiff been permanently injured in her health?

Ans. No.

56. Did not the plaintiff miscarry on account of the injuries received?

Ans. Yes.

57. If so, how much has she been injured?

Ans. $500.00.

If upon the foregoing facts the law is with the

plaintiff, we find for the plaintiff and assess her damages at $500.00. If the law is with the said defendant, we find for the defendant."

The appellant insists that upon the facts found she was entitled to a judgment against the appellee.

In support of their contention counsel for appellant rely upon the following as general legal propositions applicable to the facts in this case, viz:

1st. That "a common carrier of passengers is bound to carry and transport for hire persons who are sick, weak and debilitated," and "to see and know the care required to safely carry and transport such a one, and if it accepts such a one as a passenger, its contract holds it to perform and carry out its obligation in such a way as to protect such passengers from injuries."

2d. That when a common carrier of passengers "accepts a woman 'pregnant and heavy with child' public policy as well as humanity demands that it shall use ordinary care and see to it that she is carried so that she will not be bruised, maimed and injured."

3d. "When injuries are shown to have been sustained, without the fault or negligence of the injured party    *    *    *    the law casts the burden upon the common carrier to show that such injuries were not the result of negligence or want of care on the part of the common carrier."

As a general rule a common carrier of passengers is bound to accept and transport upon equal terms, all persons seeking passage, who conform to such reasonable conditions as it may establish and impose for the proper and safe transaction of its business. Its duty is to extend to all applicants like rights and privileges and to exact no greater or more stringent obligations from one than another under like circumstances. It would not be required to accept and trans-

port one having a contagious disease, which might be communicated to other passengers. Neither would it be required to accept and transport as a passenger one whose presence would endanger either the safety or reasonable comfort of its other passengers, or who would injure its property or in any way interfere with the operation of the train, or the carrier's servants in the performance of their duties. Its duty is to accept and transport all those who are.in proper condition to be transported and who will not interfere with the rights of other passengers, or the carrier and its servants in the operation of the road. If a carrier accepts a passenger *knowing* that he is sick or infirm it must use ordinary care to see that he is transported safely and is given a reasonable time and proper assistance in getting on and off its cars. Able-bodied persons, whether men or women, who appear physically able to get on and off the cars, the carrier is ordinarily under no legal obligation to assist.

"The law requires common carriers of passengers to take and carry every one who desires to go, provided they have room, and there be no objection on account of the condition, habits, character, deportment, or purposes of the passenger," say the court in *Galena, etc., R. R. Co.* v. *Yarwood*, 15 Ill. 468.

"It may be the duty of a common carrier of passengers to carry under discriminating restrictions, or to refuse to carry those who, by reason of their physical or mental condition, would injure, endanger, disturb, or annoy other passengers.  *  *  *  Healthy passengers in a palatial car would not be provided with reasonable accommodations, if they were there unreasonably or negligently exposed, by the carrier, to the society of small-pox patients. Sober, quiet, moral, and sensitive travelers may have cause to complain of their accommodations, if they are unreasonably ex-

posed to the companionship of unrestrained, intoxicated, noisy, profane, and abusive passengers, who may enjoy the discomfort they cast upon others. In one sense, both classes, carried together, might be provided with equal accommodations; in another sense, they would not. The feelings not corporal, and the decencies of progressive civilization, as well as physical life, health, and comfort, are entitled to reasonable accommodations." *McDuffee* v. *Railroad,* 52 N. H. 451.

In the case of *Meyer* v. *St. Louis, etc., R. W. Co.,* 54 Fed. 116, Shiras, J., says: "It is well settled that a common carrier is not obliged, as a matter of law, to receive as a passenger an insane or drunken person, or one whose physical or mental condition is such that his presence upon the vehicle of the carrier may cause injury or substantial discomfort to the other passengers." And in support of the proposition, cites Wood R. W. Law, 1035; *Putnam* v. *Broadway, etc., R. R. Co.,* 55 N. Y. 108; *Pearson* v. *Duane,* 4 Wall. 605.

In a number of cases has it been held that a carrier is not bound to accept as a passenger one whose ostensible business is to injure the carrier's property or business; one fleeing from justice; one going upon the train to assault a passenger or commit larceny or robbery, or for interfering with the proper regulations of the company, or for the purpose of gambling, or to commit any crime. Nor is it bound to accept one as a passenger who is physically or mentally disabled and unable to take care of himself. *Thurston* v. *Union Pac. R. R. Co.,* 4 Dill (U. S.) 321; *Barney* v. *Steamboat Co.,* 67 N. Y. 301; *Jencks* v. *Coleman,* 2 Sumner 221; *Bennett* v. *Dutton,* 10 N. H. 481; *Vinton* v. *Middlesex R. R. Co.,* 11 Allen (Mass.) 304; *Walsh* v. *Chicago, etc., R. R. Co.,* 42 Wis. 23; *Milliman* v. *New York, etc., R. R. Co.,* 66 N. Y. 642; *Croom* v. *Chicago, etc., R. W. Co.,* 52 Minn. 296, 18 L. R. A. 602, 53 N. W.

1128; *Pittsburgh, etc., R. R. Co.* v. *Pillow,* 76 *Pa.* St. 510; *Arnold* v. *Illinois, etc., R. R. Co.,* 83 Ill. 273; *Pittsburgh, etc., R. W. Co.* v. *Vandyne,* 57 Ind. 576.

A carrier is not bound to turn its cars into nurseries, prisons, or hospitals, or its employes into nurses or jailers. Neither is it required to furnish medical attendance, medicines or other articles necessarily needed by the sick. If a person desiring to become a passenger, is unable, on account of extreme youth or old age, or any mental or physical infirmities, to take care of himself, he ought to be provided with an attendant to take care of him. The carrier is not bound to furnish him an attendant.

It is the duty owing from a carrier to all of its passengers alike, whether sick or well, able bodied or infirm, old or young, rich or poor, white or black, to use at least ordinary care in their transportation and any negligence on its part resulting in injury to a passenger without the passenger's negligence contributing thereto must be answered for in damages.

So far as the facts found disclose, the appellant was able to go about the streets and travel upon the cars without the aid, care or attention of an attendant. In fact it appears that at the time she was injured, she had under her charge and control, a child whom the conductor of the car was helping to alight from the car at the time appellant was alighting. There is nothing in the facts disclosing any want of care or attention on the part of the appellee or its servants, which had anything to do with appellant's injury. In fact the conductor of the car was assisting appellant to alight by helping her child off the car and no doubt had the time and opportunity been offered after helping the child from the car, he would have given his assistance and kindly offices to appellant in her efforts to alight safely. The cause as found by the jury,

which brought about the appellant's injury was the jostle and pushing by other passengers, and the further fact that another passenger stepped his foot, or placed his cane upon her dress just as she was stepping onto the car step.

The appellee was not answerable under the facts disclosed in this case either for the pushing or jostling of the appellant by the other passengers, or for the act of the other passenger in stepping his foot or placing his cane upon her dress.

These were the causes, the jury found, which brought about appellant's injury. The appellee was not answerable for them and no right of action accrued in appellant's favor against appellee, by reason thereof. To say, as counsel in their brief insist, that a common carrier must at its peril not only carry safely, but see that no person is injured in alighting either by reason of their own negligence or the negligence of other passengers, would be to carry the rule beyond that declared by any other reputable court that we know of, and to hold the carrier a warrantor of the passenger's absolute safety against all contingencies, and would be to hold that the law assumes not only that the party himself and all other passengers were careful and prudent, but that the injured party's own negligence did not contribute to his injury. The rule, however, is that the burden rests upon the injured party to establish the fact that he was free from negligence contributing to his injury. The carrier does not warrant the passenger's absolute safety, but it does agree to exercise due care and diligence in his transportation.

Whether the appellant herself was or was not free from fault we need not consider, for it is sufficient for the purposes of this decision to decide as we have already stated that the facts found by the jury are

wholly insufficient to warrant an inference of actionable negligence upon the part of the appellee.

The judgment of the court below is in all things affirmed.