ALICE CONNORS, administratrix, *vs.* CUNARD STEAMSHIP COMPANY, LIMITED.

SAME *vs.* SAME.

Suffolk.    December 3, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Carrier,* Of passengers by water.  *Ship.*  *Evidence,* Presumptions and burden of proof. *Practice, Civil,* Ordering verdict, Order for judgment by full court, Election of remedy. *Supreme Judicial Court.*  *Contract,* Implied in law.  *Probate Court,* Jurisdiction, Decree.  *Judgment.*

A carrier of passengers by water lawfully may refuse to take a passenger on an ocean voyage who is not fit to travel without medical attention and depends wholly on the carrier to furnish it, and who has purchased an ordinary ticket for the voyage at the regular price without giving notice of his condition.

In an action of tort against a steamship corporation for refusing to take the plaintiff's intestate as a passenger on an ocean voyage, where the plaintiff's evidence necessarily disclosed the facts that the plaintiff's intestate was not fit to travel without medical attention and depended wholly on the defendant to furnish it, and that she was provided with an ordinary ticket for the voyage which had been purchased at the regular price without giving notice of her condition, and these facts were held to justify the refusal of the defendant to take her on the voyage, it also was *held,* that, although in an action of tort the burden of proving a justification is on the defendant, such burden here was sustained for the defendant by the plaintiff's evidence, and that a verdict should have been ordered for the defendant.

In an action of tort where the plaintiff's evidence disclosed facts which proved a justification of the acts of the defendant, and where after a verdict for the plaintiff it was held, upon an exception to a refusal of the presiding judge to rule that upon all the evidence the plaintiff could not recover, that a verdict should have been ordered for the defendant, this court under St. 1909, c. 236, ordered that judgment should be entered for the defendant.

In two actions, one of contract and the other of tort, against a steamship corporation for refusing to take the plaintiff's intestate upon an ocean voyage for which she was furnished with a ticket purchased from the defendant without notice of the fact that she was unfit to travel without medical attention for which she depended wholly on the defendant, this court did not find it necessary to determine whether an order made by the presiding judge that the plaintiff must elect between the action of contract and the action of tort would have been correct if the plaintiff had had a right of action in tort, because it was held that the plaintiff had no right of action in tort.

The administrator of the estate of a woman, whom a steamship company rightly refused to take on an ocean voyage upon an ordinary ticket purchased for her without notice of the fact that she was unfit to travel without medical attention for which she depended wholly on the steamship company, if the ticket was bought for the woman by another person and the steamship company has not refunded the passage money to anybody, properly may bring an action of contract against the steamship company to show, if he can, that his intestate was the person to whom the money was due.

The decree of the Probate Court, upon a petition for administration which alleged that the intestate "last dwelt in Boston," appointing the petitioner administrator of the estate of the intestate "late of Boston," is an adjudication that the intestate was an inhabitant of or resident in the county of Suffolk at the time of his decease, and thus shows that the court had jurisdiction to grant the administration whether or not the intestate left property to be administered within that county.

The jurisdiction of the Probate Court in granting administration upon the estate of an intestate, on the ground that the intestate was at the time of his death an inhabitant of or resident in the county where the court is established, cannot be questioned in an action of contract brought by such administrator for money alleged to have been due to his intestate, and in such an action the finding of fact made by the Probate Court as to the residence of the intestate is not the subject of attack.

TWO ACTIONS, one of CONTRACT and the other of TORT, by Alice Connors as administratrix of the estate of Margaret Connors against the Cunard Steamship Company, Limited, a corporation established under the laws of the Kingdom of Great Britain and Ireland, for removing the plaintiff's intestate on February 28, 1905, from the defendant's steamship Ivernia, on which the intestate held a ticket for a passage from Boston to Queenstown. Writs dated August 16, 1906.

In the Superior Court the cases were tried together before *Brown,* J. Against the objection and exception of the plaintiff, the judge compelled her to elect between the action of contract and the action of tort. The plaintiff, subject to such exception, elected the action of tort, and the judge thereupon directed the jury to return a verdict for the defendant in the action of contract. It was conceded that $80 which was paid to the defendant

as passage money had not been refunded by the defendant. The plaintiff alleged exceptions in the action of contract.

In the action of tort the judge, among other refusals of rulings requested by the defendant, refused to rule that upon all the evidence the jury would not be justified in bringing in a verdict for the plaintiff. He submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,384, of which the plaintiff on a motion of the defendant for a new trial remitted all in excess of the sum of $1,000. The defendant alleged exceptions.

The following statement of the case is taken from the opinion of the court:

On February 24, 1905, the defendant corporation sold a ticket entitling the plaintiff and the intestate, who was her sister, to a second cabin passage from Boston to Queenstown (or Liverpool) on the Ivernia sailing from Boston on the twenty-eighth of the same month. The ticket was sold to Mrs. Freeman, (by whom the plaintiff and her sister had been employed for some two years,) and not to the plaintiff nor to the intestate. But no question on that point was raised at the trial.

The intestate came to this country in 1893 and had been employed as a servant in several families during the intervening twelve years. On February 13 or 14, 1905, upon the advice of her physician, she submitted to an exploratory operation at a hospital. This operation disclosed the fact that the intestate was suffering from a cancer of the uterus and that on account of the peculiar position of the growth and its advanced stage an operation would not be of benefit to her. The plaintiff's evidence also showed that her death was expected in five or six months. These facts and the probable result of an operation were known to the plaintiff but not to the intestate.

On the morning of February 28 the two sisters, with some friends, drove to the defendant's wharf in East Boston. The Ivernia was not ready to receive second class passengers when they arrived, and they waited in a room for some fifteen minutes.

The evidence was somewhat conflicting as to the movements of the intestate between the time when she left the waiting room and undressed and went to bed in her room on the Ivernia.

The plaintiff's evidence tended to show that she walked about and talked with her friends, while the defendant's evidence tended to show that she was supported and almost carried to her room, and that she looked very ill at the time. The evidence of both parties showed that she undressed and went to bed before the Ivernia cast off from the wharf.

The fact that the intestate had undressed and gone to bed was reported to the ship's surgeon, who was on duty at the third class gangway. He immediately stopped embarkation at that gangway and went to her room. On arriving there he felt her pulse, looked at her tongue and asked the intestate and the plaintiff what the matter was. Whereupon the plaintiff handed to the surgeon the following letter from Dr. Hare:

" 27th. Feb.

" Ship Surgeon S. S. Ivernia

" My dear Doctor,

" May I explain to you a most sad case which will be under your care during this crossing.

" The patient herself has no idea of the nature of her trouble so will you kindly make light of anything occurring and give us your aid in concealing facts.

" This note will be handed to you by her sister who knows all.

" She has endothelioma of uterus too advanced for more than curetting and cautery, which I did Feb. 13. Unfortunately this is her week to expect menstruation but I trust it will give you no special trouble. She will be supplied with creolin for douches and codeia suppos. ($\bar{o}\,\bar{v}$ grs $\overline{iss}$) for pain if needed.

" May I suggest an early vaginal pack should the loss of blood pass the normal that strength may be saved until she reaches home.

" Any kindness shown to her if in need will be greatly appreciated by myself and others.

" Thanking you in advance I am

" Very sincerely,

" C. H. Hare."

The surgeon read this letter, left the room, and gave directions that the intestate should not be allowed to proceed on the voyage.

The plaintiff testified "that thereupon the intestate dressed and walked to the stairs, where some stewards made a chair of their hands and carried her up and placed her on a settee in the second-cabin waiting room on the wharf," where she had to wait for an hour or more while a carriage was procured. Finally the carriage arrived, their baggage was found and they drove to the house of a friend in Chelsea, arriving there between four and five o'clock in the afternoon. The plaintiff and her intestate stayed at the friend's home in Chelsea for five weeks, when they sailed on the White Star ship Cymric as first cabin passengers, arriving at Queenstown on April 13. The intestate died at her home in Ireland on July 29 of the same year.

The ship's surgeon testified that after reading the letter he said "that under the circumstances Margaret Connors was not in condition to travel without serious risk to her life. The sister told me that Dr. Hare said she was fit to travel, and denied the statement made in Dr. Hare's letter as to the menstrual period." He further testified: "I told Margaret Connors and her sister I considered her in an unfit condition to travel just then, and that they should postpone the voyage. I also told Mr. Edwards, of the Cunard Boston office that I refused to take charge of the case."

On the part of the plaintiff testimony was given by a Boston physician and by the specialist who performed the exploratory operation on the intestate, and also by a surgeon who examined her just after February 28: "That in their opinion there was nothing about the physical condition of the plaintiff's intestate on or about February 28, 1905, that would make a voyage across the ocean dangerous to her; that she was not too weak to travel; that she was not in any danger of immediate death from the disease or from its rapid progress; that its progress would be slow; that there was no reason to expect any fatal hemorrhage or any sudden termination of the disease; that she was just as safe on the sea as on the land; that any packing rendered necessary or advisable during the voyage on account of any possible hemorrhage would require no surgical instruments, and could be accomplished by the hands; that if one desired to use instruments, an ordinary spoon was as useful as anything else; that any such packing did not require the skill of a physi-

cian, but could be performed by a nurse, the intestate's sister, or any ordinary person fairly conversant with such matters."

Nothing was said to the defendant corporation when the ticket for the intestate and the plaintiff was bought of it, as to the intestate's condition.

The defendant asked for thirty rulings on liability and six on the damages recoverable. Among other rulings asked for by it was a ruling directing the jury as matter of law to find a verdict in its favor.

The plaintiff was required to elect between her action in tort and her action in contract and she elected to go to the jury on her action in tort. The action in tort is the second of the two actions now before us.

The presiding judge instructed the jury that on the liability of the defendant there was only one question for them to decide, to wit : Did the intestate leave the Ivernia voluntarily ?

The plaintiff had a verdict and the case is here on exceptions.

*J. L. Putnam*, for the defendant.

*T. Hunt*, for the plaintiff.

LORING, J. [After the foregoing statement of the case.] The principal question presented by the defendant's exceptions in the second action is an important one, not directly decided in any case which has come to our attention.

The general rule that a common carrier is bound to accept anybody and everybody who presents himself for transportation and pays the regular fare, has its limitations. A common carrier is bound to care for all who have become its passengers. For that reason not only is it not bound to accept but it is under obligation to refuse to accept as a passenger an insane person without a proper attendant or attendants (*Owens* v. *Macon & Birmingham Railway*, 119 Ga. 230 ; *Meyer* v. *St. Louis, Iron Mountain & Southern Railway*, 54 Fed. Rep. 116) ; or one who has smallpox. (*Paddock* v. *Atchison, Topeka & Santa Fé Railroad*, 37 Fed. Rep. 841.) And the same is true of one who because of intoxication or for any other reason would be offensive to other passengers. *Vinton* v. *Middlesex Railroad*, 11 Allen, 304. *Murphy* v. *Union Railway*, 118 Mass. 228. *Hudson* v. *Lynn & Boston Railroad*, 178 Mass. 64. *Lemont* v. *Washington & Georgetown Railroad*, 1 Mackey, 180.

The jury were instructed in *Thurston* v. *Union Pacific Railroad*, 4 Dill. 321, that a common carrier was not bound to accept as a passenger one who sought transportation for a criminal purpose and on that ground that the defendant was justified in refusing to sell a ticket to a three card monte man.

It was held in all these cases that the justification was made out if the carrier had reasonable cause to suppose and did suppose that the safety or convenience of other passengers would be endangered by the person in question and that it was not necessary to wait to see whether the person believed and with reason to be afflicted with an infectious disease or so insane, drunk or sick as to be likely to interfere with the safety or convenience of other passengers was or was not in fact in the condition he appeared to be in.

The doctrine established by these cases is admitted by the learned counsel for the plaintiff. His contention is that the right of the carrier to exclude a person who wishes to become a passenger is confined to those cases where the safety or convenience of other passengers is endangered or thought to be endangered and that "the mere fact that a person is afflicted with an internal disease will not justify" a carrier in refusing to accept him as a passenger if he offers to pay the regular fare. He relies on statements in *Sheridan* v. *Brooklyn City & Newtown Railroad*, 36 N. Y. 39, *Pullman Palace Car Co.* v. *Barker*, 4 Col. 344, *New Orleans, Jackson & Great Northern Railroad* v. *Statham*, 42 Miss. 607, and the decision in *Zachery* v. *Mobile & Ohio Railroad*, 74 Miss. 520, in support of that contention.

The decision in *Zachery* v. *Mobile & Ohio Railroad* does not help the plaintiff. What was there decided was that the complaint in that case stated a good cause of action. It was a complaint for refusing to sell the plaintiff a ticket because he was blind. But the report states that "it is alleged in the complaint and admitted by the demurrer, that appellant was not infirm but robust, able to take care of himself, and to comply with the rules applying to passengers generally; that he had been travelling on appellee's road for several years, and given no cause of complaint to appellee's servants, and none was ever made. All this being admitted by the demurrer, the doctrines laid down in *Sevier* v. *Vicksburg & Meridian Railroad*, 61 Miss.

8, 10, relied on by appellee, do not apply to this case. There is nothing to show that appellant was informed that the absence of an attendant was the cause of his rejection, and nothing to show that he needed one."

There is a general statement in the opinion in *Sheridan* v. *Brooklyn City & Newtown Railroad*, 36 N. Y. 39, 42, that a sick person is entitled to ride in the cars, and there is a similar statement in *Pullman Palace Car Co.* v. *Barker*, 4 Col. 344, 348. But taken in connection with the point under discussion in the case in question neither statement is of importance. The question to be decided in *Sheridan* v. *Brooklyn City & Newtown Railroad* was whether the judge was wrong in refusing to instruct the jury that the fact that the deceased (for whose death the action was brought) was a child (he was nine years old) makes no difference in the rule of law as to the question of negligence, if not of years of discretion he should have a protector. The court held that the ruling asked for was wrong, and in discussing that question said that " a sick or aged person, a delicate woman, a lame man, or a child " is entitled to more attention in getting on or off the cars or in crossing a street than one in good health and under no disability. The court then added the statement here relied on : " All these classes are entitled to use the streets and to ride in the cars." The similar statement made in *Pullman Palace Car Co.* v. *Barker* is of no more significance. In that case a car of the Pullman Company got on fire through the negligence of its servants, and the plaintiff had to leave her berth and go to another car on an " extremely " cold night, in her night clothes. " She caught a severe cold which caused the cessation of her menses, and resulted in a long period of illness." It was held that the negligence of the defendant was not the immediate cause of that illness. In deciding that point the court said : " Persons who are ill have a right to enter the cars of a railroad company and travel therein, as a common carrier of passengers the company has no right to prevent them, but the increased risk arising from conditions affecting their fitness to journey, certainly where they are unknown to the carrier, must rest upon their own shoulders." There is a somewhat similar statement of no more consequence in *New Orleans, Jackson & Great Northern Railroad* v. *Statham*, 42 Miss. 607, 613.

On the other hand it is plain that the right to exclude is not confined to cases where the safety or convenience of other passengers is endangered or thought to be endangered.

In *Jencks* v. *Coleman*, 2 Sumn. 221, 224, Judge Story charged the jury that a carrier had a right to refuse to accept as a passenger a man who came to solicit while in transit as a passenger patronage for a line of stage coaches which ran in opposition to the line with which the carrier had made a contract in order to create a convenient through line of travel. Similar decisions were made in *The D. R. Martin*, 11 Blatch. 233, and in *Barney* v. *Oyster Bay & Huntington Steamboat Co.* 67 N. Y. 301.

It was held in *Louisville, Nashville & Great Southern Railroad* v. *Fleming*, 14 Lea, 128, that an old colored man eighty-three years of age, whose hands were partially paralyzed and numb, had no cause of action for being put off the train on his failure to produce his ticket or pay his fare. There was evidence that he had a ticket in his pocket and that the conductor although he tried failed to find it.

In *Sevier* v. *Vicksburg & Meridian Railroad*, 61 Miss. 8, it was held that a man had no cause of action who while sick with fever got on a train and told the conductor when he gave him his ticket that he was sick with fever, that he wanted to sleep and to be waked up at Jackson; the conductor did not wake him up and he had to walk back four miles from the station next beyond Jackson.

In *Croom* v. *Chicago, Milwaukee & St. Paul Railway*, 52 Minn. 296, " the defendant accepted the plaintiff as a passenger on its train for transportation from Savannah, Ill., by way of Austin, Minn., to Wells, in this State. He was aged eighty years, feeble, and infirm in mind and body, and hence required special care and assistance during his journey, of which fact the defendant was informed when it accepted him as a passenger by a letter from its station agent at Savannah, which accompanied his ticket, and was exhibited to each successive conductor on the train." It was held that having voluntarily accepted as a passenger one who required extra care it was bound to furnish it. In coming to that conclusion it was said, at page 298: " Of course, a railroad company is not bound to turn its cars into nurseries or hospitals, or its employees into nurses. If a passenger, because of extreme youth.

or old age, or any mental or physical infirmities, is unable to take care of himself, he ought to be provided with an attendant to take care of him. But if the company voluntarily accepts a person as a passenger, without an attendant, whose inability to care for himself is apparent or made known to its servants, and renders special care and assistance necessary, the company is negligent if such assistance is not afforded. In such case it must exercise the degree of care commensurate with the responsibility which it has thus voluntarily assumed, and that care must be such as is reasonably necessary to insure the safety of the passenger, in view of his mental and physical condition."

If the most favorable view is taken of the plaintiff's evidence in the case at bar, her intestate presented herself on February 28, as a person who would require medical attention during the voyage in question and expected the defendant corporation to furnish it. There is nothing in the evidence which would warrant a finding that the intestate's sister assumed to have any medical knowledge or skill.

The question of accepting as a passenger a person in need of medical attention is a more serious one in case of a carrier by water than in case the proposed transportation is on land. Hospitals abound on shore, and even where there are no hospitals physicians and surgeons can be found at different stopping places to whose care the traveller in need of medical attendance can be confided. But in case a person in need of medical attendance is taken as a passenger on a sea voyage she must be cared for until the voyage is at an end, and if she is not accompanied by her own physician it might well be held that the responsibility of caring for her had been assumed by the carrier.

We are of opinion that a common carrier is bound to take as passengers all who offer themselves, ill or well, provided the carrier can furnish the necessary accommodations and the passenger is willing to pay for what he demands.

But where a person who is ill presents herself to a common carrier for transportation by water it is her duty to state the fact that she is ill and make special arrangements for her transportation as a person in need of medical attention. Speaking in another connection this court said in *Spade* v. *Lynn & Boston Railroad*, 168 Mass. 285, 289, " if, for example, a traveller is sick

or infirm, delicate in health, specially nervous or emotional, liable to be upset by slight causes, and therefore requiring precautions which are not usual or practicable for travellers in general, notice should be given, so that, if practicable, arrangements may be made accordingly, and extra care be observed."

The case of a person requiring medical attendance does not come within the same class as the cases (put in some of the opinions) where a very old or a very young person is alighting from a car, and for that or any other reason requires more time than a person in good health and not under a disability. Those persons and persons laboring under other difficulties are included in the class of persons fit to travel. What we have to consider in the case at bar is the case of one not fit to travel without medical attention. Had notice been given to the defendant corporation of the condition of the plaintiff's intestate when her ticket was bought for her the question of what care her physical condition was likely to demand and how and by whom it was to be provided could have been taken up with deliberation and some special arrangement made for the necessary extra care and the amount to be paid to the defendant corporation if it was arranged that the extra care was to be furnished by it.

But nothing of that kind was done in the case at bar. The ticket for the plaintiff's intestate was bought and paid for and she presented herself for embarkation as an ordinary passenger. We are of opinion that the presentation of Dr. Hare's letter was a representation by her that she needed medical attention during the voyage and looked to the defendant corporation to supply it.

If after the visit which the ship's surgeon paid to the intestate while she was lying in bed in her room the intestate had not been put ashore there would have been a serious question whether the defendant corporation had not assumed the responsibility of giving her proper medical care during the voyage on the principle acted upon by the court in deciding for the plaintiff in *Croom* v. *Chicago, Milwaukee & St. Paul Railway*, 52 Minn. 296.

A ship's surgeon seems to have been aboard the Ivernia in compliance with St. 18 & 19 Vict. c. 119, § 41, which requires every "Passenger Ship" to carry "a duly qualified Medical

Practitioner" whenever the number of persons on board (including cabin passengers, officers and crew) exceeds three hundred. So far as the decision of the second of the two cases now before us is concerned it may be assumed that a passenger who falls ill during the voyage can call upon the "medical practitioner" for medical attention. But neither St. 18 & 19 Vict. c. 119, § 41, nor the presence on the Ivernia of a "medical practitioner" in compliance with that act changes the right of a common carrier by water not to receive as an ordinary passenger a person in need of medical attention.

In our opinion such a carrier has that right.

In the case at bar the facts which made out the defendant's justification in refusing to accept the plaintiff's intestate as a passenger were a part of the plaintiff's case put in by her. Under these circumstances a verdict for the defendant should have been directed as matter of law in spite of the fact that the burden of proving a justification in the action of tort was on the defendant, as to which, see *Mountford* v. *Cunard Steamship Co.* 202 Mass. 345. For cases where it has been held under similar circumstances that a verdict for the defendant should have been entered as matter of law, see *Debbins* v. *Old Colony Railroad*, 154 Mass. 402, and *Emery* v. *Boston & Maine Railroad*, 173 Mass. 136.

We are of opinion that the entry in the second action should be judgment for the defendant. See St. 1909, c. 236.

It is not necessary to decide whether the order of the judge requiring the plaintiff to elect would have been right had the plaintiff had a right of action in tort. As we have said the plaintiff in our opinion had no right of action in tort. Some one has a right to have the passage money paid for the ticket for the plaintiff and her sister returned or such part of it as is due after the defendant has been allowed to recoup any expense it was at in providing for the passage of the two. That question was not tried. The plaintiff should have a right to show that she is the person to whom that money is due. For that reason the plaintiff's exceptions to the order directing a verdict for the defendant in the first action should be sustained.

As the first action must go back for a new trial, the question as to the legality of the appointment of the plaintiff as adminis-

tratrix of the estate of her sister will come up for decision, and, although it was raised by the defendant's bill of exceptions in the second action, we shall consider it as a question likely to arise at the new trial of the first action.

The plaintiff's petition for administration on the estate of Margaret Connors was founded on the fact that Margaret Connors was an inhabitant of or resident in the county of Suffolk at the time of her death. It follows the approved form and alleges that she "last dwelt in Boston." The decree of the Probate Court appointing the plaintiff administratrix of the estate of "Margaret Connors late of Boston" is an adjudication that Margaret Connors was an inhabitant of or resident in the county of Suffolk at the time of her decease. The Probate Court has jurisdiction to grant administration of the estate of persons who at the time of their decease were inhabitants of or residents in the county without proof that they left estate to be administered within the county. Jurisdiction to grant administration in case the deceased was a resident was given by St. 1783, c. 46, § 1. The other jurisdiction to grant administration in case the deceased was a non-resident who left property to be administered within the Commonwealth was first given by St. 1817, c. 190, § 1.

The question whether the Probate Court was wrong in finding as a fact that Margaret Connors was before her death an inhabitant of or resident in the county of Suffolk is not open in this action. By Rev. Sts. c. 83, § 12, it was provided that the jurisdiction assumed by a judge of probate so far as it depends upon the place of residence of any person shall not be contested except in an appeal or when the want of jurisdiction appears in the same record. This was re-enacted in Gen. Sts. c. 117, § 4, and in Pub. Sts. c. 156, § 4. The Probate Court was put on the same footing as that of the Supreme Judicial Court in equity by St. 1891, c. 415, § 4, that is to say, on the footing of a court of general jurisdiction. Both provisions were reported by the commissioners who drafted the Revised Laws. Commissioners' Report, R. L. c. 162, §§ 2, 8. The Legislative Committee omitted § 8 being the proposed re-enactment of Rev. Sts. c. 83, § 12. This evidently was done because the broader provisions of St. 1891, c. 415, § 4, made the continuance of Rev. Sts. c. 83,

§ 12, unnecessary. We are of opinion that the finding of fact made by the Probate Court as to the residence of Margaret Connors was not the subject of attack in this action.

The result is that the entry in the first action must be exceptions sustained and in the second action judgment for the defendant.

*So ordered.*