### CHICAGO & S. H. S. S. CO. v. LYNCH.

(Circuit Court of Appeals, Seventh Circuit. October 8, 1912.)

No. 1,889.

1. SHIPPING (§ 166*)—CARRIAGE OF PASSENGERS—INJURY TO SICK PASSENGER—LIABILITY OF CARRIER—QUESTION FOR JURY.

Plaintiff, a young woman, while an excursion passenger on defendant's steamer on Lake Michigan, during a high wind which caused the vessel to roll heavily, became very sick, as did many other passengers. She was seated in a chair against the cabin wall, with other occupied chairs on either side and in front, when the cabin watchman directed her to move, so he could enter a stateroom with another passenger. She was entirely helpless, and the watchman, with knowledge of her condition, moved her chair to the center of the cabin, where the floor was slippery, and, owing to her helpless condition, she was thrown to the floor by the rolling of the vessel and severely injured. *Held*, that the question of the liability of defendant for the action of its employé in moving plaintiff from a place of comparative safety, without her consent or volition, to a place which proved less safe, was one for the jury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 538–552; Dec. Dig. § 166.*]

2. SHIPPING (§ 166*)—ACTION FOR INJURY TO SICK PASSENGER—EVIDENCE.

In such action, evidence of the slippery condition of the cabin floor was competent.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 538–552; Dec. Dig. § 166.*]

3. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE DAMAGES—PERMANENT INJURY TO FOOT.

An award of $11,000 damages to a previously healthy woman, 35 years old, for a permanent injury to her foot, which practically crippled her for life, from which she constantly suffered pain, and which was likely to become worse, *held* not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by Birdie Lynch against the Chicago & South Haven Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff and her mother on July 22, 1909, purchased excursion tickets at Chicago for a round trip to South Haven and return. They paid $1 each for two tickets, and this entitled them to passage on the steamer, but did not include either meals, staterooms, or berths. The steamer South Haven is a steel passenger steamer 248 feet long, 43 feet beam, and was allowed to carry 2,850 excursion passengers, and under an inspection by the local United States inspectors was required to carry a crew of 68 officers and men all told, but on this voyage had a crew of 97 all told. Nothing unusual occurred on the trip from Chicago to South Haven, and at 5 o'clock the steamer left the port of South Haven bound to Chicago on the return trip. She had on board then 651 passengers, less than one-quarter of the number she was allowed to carry.

The wind was blowing from 40 to 45 miles an hour from the northward and westward, and not long after leaving South Haven the steamer began to roll in the heavy sea and the passengers began to get seasick. It is estimated that three-quarters of the passengers were women and children, and the remainder men. It is usual for three-quarters of the women and children and about half of all the men to be seasick in a sea such as this was. Consequently a great number of passengers were seasick. For about an hour plaintiff with some friends sat on the after cabin deck. A northerly wind sprang up, and the air grew chilly, and the sea become rough.

Plaintiff arose and proceeded to the cabin. She began to feel ill from seasickness, and stopped for a while at the entrance. Mr. Lionheart, a witness, noticing that she was ill, looked about the cabin for a chair, and found one that was vacant. He seated plaintiff in this chair, and then procured a wooden deck chair for plaintiff's mother, who sat down, facing her daughter, with her hand on her daughter's knee. Plaintiff then was sitting in a comfortable wicker arm chair, with its back against the wall of the cabin. On either side of her were passengers occupying chairs which were close to hers, and her mother sat facing her in front. Plaintiff was extremely sick, and was weak and limp and incapable of any exertion, and from time to time she vomited. She was in a safe position, well protected, and free from danger. She had been thus situated for about an hour and a half, when the cabin watchman made his appearance, seeking entrance to a stateroom behind plaintiff's chair. He said to plaintiff: "You must move from here. I've got some folks in this stateroom; got to put these folks in this stateroom." Plaintiff attempted to get up, and fell back helpless. She was too weak to move. The watchman saw her in this sick and helpless condition, and took hold of her chair and pulled her away from her position to a point about six feet away, near the center of the cabin, and left her there, without support or protection, on a floor slippery from vomit, and without any one to give her aid. She was utterly unable to care for herself.

Before she was moved from the wall her chair remained stationary. After being moved out she noticed that it slipped twice, felt it move, some three or four inches. She was limp, seasick, vomiting, in a very weak and sick condition. "I felt my chair move, and I came in contact with something, I don't know what, and for a while I didn't remember anything * * * I found myself on the floor with a terrible pain in my foot, and a chair over me." She was picked up and properly cared for. The right foot was injured in some way by her fall. After being taken home she had competent medical attendance extending from July 22 to September 14, 1909. There was much swelling and discoloration. An examination two years later, shortly before the trial, disclosed a fracture of the small bone of the right leg at the line of the ankle joint, the upper bone of the joint was dislocated and thrown entirely forward, and the bones of the instep were ankylosed, solid, a bony ankylosis; the joints of the instep being all destroyed and amalgamated into one mass of bone, immobile. The four tendons which lift the foot are separated from the front muscle of the leg. The tendons in the front part of the ankle are either torn off or torn loose from the muscle, so that there is no power to lift the foot. The injury is a permanent one, with a tendency to grow worse.

The boat was seaworthy, and properly equipped, manned, and navigated. The chair was not defective in any way. The case was tried by jury, and a verdict of $11,000 returned, upon which judgment was entered, from which

this writ of error was taken. Defendant moved the court at the close of all the evidence to direct a verdict for it, which was denied. Error is also assigned for the refusal of the court to charge that plaintiff took the risk of the rolling and pitching of the steamer, and of her own and the seasickness of other passengers in consequence thereof, and in charging that the condition of the floor of the cabin in any manner contributed to or caused the injury; also that the amount of the verdict is excessive.

Charles E. Kramer, of Chicago, Ill., for plaintiff in error.

Axel Chytraus and Emery S. Walker, both of Chicago, Ill., for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). The main question is whether plaintiff was injured by the rolling of the steamer and her own seasickness, over which defendant had no control, or by the negligence of the cabin watchman in moving her from a place of safety into an unsafe position. Counsel for defendant urges that one place was as safe as the other, that no other person fell, that no reasonable person would anticipate an injury from the placing of plaintiff in a comfortable and proper chair near the center of the stateroom, even in her condition of sickness, and that the highest degree of care consistent with the practical operation of the vessel was exercised. On the other hand, plaintiff's position is that it was a question of fact, properly submitted to the jury, whether it was not negligence for the watchman to take her, for the convenience of another passenger, from a position where her chair was against the cabin wall, flanked on both sides by other occupied chairs, and protected in front by her mother's chair, and place her in a comparatively unprotected place upon a slippery floor, especially in view of her extreme helplessness; that if she had not been moved at all no liability could have resulted, but if defendant assumed to change her position it was its duty to put her in a place equally safe. Upon this point the court charged as follows:

"If the plaintiff became sick on defendant's boat, and the defendant's employés knew of her sickness, it was their duty to treat her with such care and consideration as were reasonably necessary to protect her from injury. And if the plaintiff, by reason of such sickness, was weak and helpless, and was seated in a chair in a position wherein she was safe and was protected from injury, and if one of defendant's employés, knowing her condition, moved her from such safe position by pulling or moving the chair in which she was sitting, in such manner and in such different position that the plaintiff was unsafe and unprotected, while sick and helpless and unable to care for herself, and was so left by the defendant's employé, and if, by reason thereof, no negligence of the plaintiff contributing, the plaintiff fell and was injured, the defendant is liable to the plaintiff for damages for the injuries thus sustained, provided you further believe from the evidence that in so doing the act of defendant's employé was not the exercise of the highest degree of care by the defendant for the plaintiff's safety, consistent with the practical operation of defendant's boat."

[1] 1. The jury were justified in finding, under this instruction, that defendant voluntarily assumed the responsibility of taking some degree of care of plaintiff when she was moved from the wall. In

this way defendant's attention was specially called to her, her condition of helplessness, and all the surrounding circumstances, and it thus became its duty, as she was unable to care for herself, to take reasonable means to insure her safety. Whether leaving her in the changed position would be likely to cause injury, or the watchman could reasonably have foreseen the probability of injury, were questions for the jury, depending on the extent to which the boat was lurching or rolling, plaintiff's degree of helplessness, the condition of the floor, and other attending circumstances. All these conditions, not capable of being fully reproduced from the printed record, made the case peculiarly one for the jury. In this case we need go no further than to hold that if a sick or helpless passenger is, for the convenience of another passenger, taken from a place of comparative safety without his consent or volition, and put in another place found as a matter of fact to be less safe, liability for a resulting injury is a question for a jury. The degree of responsibility of carriers for sick passengers is discussed in Croom v. Chicago, etc., Co., 52 Minn. 296, 53 N. W. 1128, 18 L. R. A. 602, 38 Am. St. Rep. 557, A., T. & S. F. R. Co. v. Weber, 33 Kan. 543, 6 Pac. 877, 52 Am. Rep. 543, Mathew v. Wabash R. Co., 115 Mo. App. 468, 78 S. W. 272, 81 S. W. 646, Haug v. Great N. R. Co., 8 N. D. 23, 77 N. W. 97, 42 L. R. A. 664, 73 Am. St. Rep. 727, Conolly v. Crescent City R. Co., 41 La. Ann. 57, 5 South. 259, 6 South. 526, 3 L. R. A. 133, 17 Am. St. Rep. 389, and L. S. & M. S. R. Co. v. Salzman, 52 Ohio St. 558, 40 N. E. 891, 31 L. R. A. 261.

[2] 2. Error is assigned for not excluding evidence of the slippery condition of the cabin floor. As we have seen, this was one of the attending circumstances to be considered by the jury in determining whether there was any negligence. It was as pertinent, though perhaps not as influential, as the lurching of the vessel or the physical condition of the plaintiff.

3. It is urged that the court erred in not charging the jury that plaintiff took the risk of the rolling and pitching of the boat and of her own seasickness and that of other passengers. The court did so charge. The jury were repeatedly told that the plaintiff could not recover unless defendant was negligent, that the burden of proof was on the plaintiff, that the mere happening of the accident did not make defendant liable, and expressly that the carrier was not liable for injuries from seasickness or rolling of the boat, apart from negligence.

[3] 4. It is claimed that the damages, found by the jury to be $11,-000, are excessive. This is a permanent injury to a previously healthy woman, 35 years old. She is practically crippled for life, suffering from a deformity which will be a constant grave annoyance and interfere with her happiness and means of livelihood as long as she would be able to earn her way. She will always suffer some pain, likely to affect her health, and she will probably gradually get worse. Under these circumstances we cannot say that the damages were excessive.

It is proper to say that the evidence as to the extent of the injury was in sharp conflict. Physicians called by defendant testified that

the fractures shown by plaintiff's evidence did not exist, and that she will ultimately recover. We have stated the case as the jury found it to be, assuming that the facts found by them implied by a general verdict are the facts established by the record.

The judgment is affirmed.