## G. D. WILSON *v.* NEW ORLEANS & NORTH EASTERN R. R. Co.

MASTER AND SERVANT.    *Railroads.    Negligence.    When company not liable.*

> A passenger at night was asleep when the train stopped at his destination and failed to get off.    He was awakened by the conductor who stated that he was still near the station.    Rather than go a long distance to the next stopping place, the train was stopped at his request and he got off.    He then discovered that he was in a swamp, a mile from the depot, and would have to walk over a long bridge in returning.    While on the bridge, carrying his child, he saw an approaching freight train, and, hurrying back, barely escaped being run over.    He was feeble and the exertion and excitement caused injury to his health and he sued the railroad company for damages.    *Held,* that he could not recover, though probably misled by what the conductor said as to where the train was. He was negligent in not getting off at the station, and the conductor was serving him and not the company in afterwards stopping.

FROM the circuit court of Lauderdale county.

HON. S. H. TERRAL, Judge.

The appellant, Wilson, was a passenger on a train of the appellee, going from New Orleans to Hattiesburg, Mississippi, where he resided.    He was accompanied by his little son seven years of

age.   He had been suffering from a wound on the head and was feeble, but he had been to New Orleans on business.   He was on a fast train known as the "cannon ball," which only made two stops between New Orleans and Meridian, Miss.   When at Purvis, about seventeen miles south of Hattiesburg, he was informed by the conductor that the train would soon reach his destination.   Soon after that he went to sleep.   The train reached Hattiesburg about eight o'clock at night and stopped there fifteen or twenty minutes. Being asleep, he failed to get off.   Soon after the train started the conductor came through and discovering that he was still on the train asked him why he had not gotten off at Hattiesburg.   The appellant manifested surprise and asked where the train was.   The conductor informed him, as he testified, that they were in the Hattiesburg yard.   Thereupon appellant asked that the train be stopped, and that he be allowed to get off, and this was done.   He then discovered that the train was about a mile from the station and had crossed the river, over which there was a long bridge. There was no way for him to return except to walk down the track and across this bridge.   The train he was upon had passed a freight train which was on a side track at Hattiesburg, but he was not aware of this.   When appellant was about the middle of the bridge, going south towards the station with his little son, he discovered this freight train approaching.   Taking the child in his arms, he hastily retraced his steps in order to get off the bridge, which he barely did in time to escape being run over by the passing train. He was quite feeble and by reason of the great exertion and excitement caused by the effort to avoid being caught by the train, his health was injured and he was damaged.   He sued the railroad on account of the same.   In the declaration he alleged that he was wilfully deceived by the conductor as to the point where the train was when he was put off; that he was rudely awakened, and in an insulting manner forcibly ejected from the train in the dark.

The defendant pleaded the general issue.

On the trial the above facts substantially were proved, except that it was shown that there was no rudeness or force used by the conductor, and it was not shown that the plaintiff was wilfully

deceived or misled as to the place where the train was, either at the time when he inquired of the conductor or when it was stopped. It was not claimed by counsel that it was incumbent on the conductor to awaken the plaintiff on reaching Hattiesburg. It was shown that the switches and side tracks extended for three or four hundred yards north of the station, and that the space covered by these was known as the yard limits. The plaintiff testified that the conductor told him that the train was in the yard, and that he supposed this to be true until after he had been put off the train, whereas the fact was that the train was much further north than was stated and was then in a swamp north of Leaf river, about a mile from the station. The conductor testified that he did not tell the plaintiff that they were in the yard, but merely said to him they were leaving Hattiesburg. ·He further testified that he did not intend to mislead or deceive the plaintiff in any way, and did not know that he was sick or feeble. The testimony for the defendant further tended to show that the conductor told the plaintiff that he would back the train to the station, or would carry him on to Meridian from whence he could return on the next train, or that he would stop there and allow the plaintiff to get off, and that the plaintiff consented to get off where the train then was. The plaintiff, however, testified that there was no offer to back the train, and that he was told that he must get off or that he would be carried on to Meridian, and that when he agreed to get off he supposed he was south of the bridge and within the yard limits.

The conductor testified that he was uneasy about the plaintiff and considered his position after he got off perilous, and that he informed him that the freight train would be coming soon. Plaintiff, however, denied that he was informed about the freight train.

The court gave the jury a peremptory instruction to find for defendant, and judgment was entered accordingly. Plaintiff appeals.

*S. B. Watts,* for appellant.

If all the facts in evidence be taken as absolutely true, and every just inference from them fails to maintain the issue, then, and only in such a case, is it proper for the court to give a per-

emptory instruction, as was done in this case. *Perry* v. *Clark*, 5 How. (Miss.) 500; *Swann* v. *Insurance Co.*, 52 Miss. 704; *Whitney* v. *Cook*, 53 Ib. 551; *Curson* v. *Leathers*, 57 Ib. 650.

Even if it be true that a verdict for exemplary damages could not be sustained, which I do not admit, the plaintiff was clearly entitled to actual damages, for medical fees and the like. It is not contended that the plaintiff was entitled to damages because the conductor failed to awaken him, but because the conductor deceived him as to the locality of the train and thereby induced him to get off in the dark at a point where he never would have gotten off if he had not been misled. He was placed in a perilous position and had to walk back, incurring the danger of an approaching freight train of which the conductor failed to warn him. The damages shown resulted from the wrong of the agent of the company, who owed a duty to the plaintiff as a passenger.

*W. N. King*, on the same side.

If the plaintiff had a cause of action, the peremptory instruction was improper. It cannot be contended that the conductor put him off at a dangerous place accidentally. If he deceived the plaintiff, it was wilful, and the defendant was liable for punitive damages. When the plaintiff asked for information as to where the train was, it was incumbent on the conductor to give him the correct information. If the conductor wilfully deceived him he ought to recover punitive damages, and in any event he is entitled to actual damages.

*Fewell & Brahan*, for appellee.

1. There was not a shadow of proof in support of the alleged violence, rudeness or intentional wrong on the part of the conductor. As soon as he discovered that plaintiff had failed to get off, he apprised him that the train was leaving the station and stopped as soon as possible. He offered to take the plaintiff to Meridian or allow him to get off there, and he chose the latter. The jury could not have inferred that there was any wilful or intentional deception, and hence punitive damages were out of the question.

2. Wilson owed his walk to his own negligence. The conductor

acted reasonably after discovering that he was still on the train, and in good faith endeavored to accommodate him.

Plaintiff utterly failed to make out a case. A verdict in his favor could not have been allowed to stand, and hence the instruction to find for defendant was proper.

CAMPBELL, J., delivered the opinion of the court.

The railroad company did the plaintiff no wrong. Its train stopped in Hattiesburg long enough, and he failed to get off. It was started on its journey, and he was aroused from his sleep and was desirous to get off. The train was stopped for his accommodation. It was a kindness to him. He had no right to have the train stop for him, but was liable to be carried to the next stopping place for that train. He was probably misled as to the precise place where the train then was by what was said by the conductor in response to his inquiry, but this gave him no right of action against the company. The conductor was not serving the company but him in what occurred. It was a matter between him and the conductor, who sought to benefit him at the expense of the company. His negligence in not leaving the train at Hattiesburg led to the effort to relieve him of the consequences of such negligence and caused all his woes, and his misfortune cannot justly be visited on the company. Railroad companies should be held responsible for all their wrongs, but not for the wrong-doing of others —not even of their employés who cease to serve them in their efforts to serve others.

*Affirmed.*