## Yazoo & M. V. R. Co. *v.* O'Keefe.

### [88 South. 1, No. 21743.]

1. Carriers. *Carrier not required to accept unattended child of tender years, but, if it does so, is liable for neglect of duty; if carrier seeks to limit ticket agent's power to contract, limitations must be posted or brought to passenger's attention.*

   The carrier of passengers is not required to accept, unattended, a child of tender years needing special attention, but it may do so, and, if it does, it is liable for injury caused by its neglect of duty. The ticket agent generally has power to make contracts for the carrier for the carriage of passengers, and such contracts are within the scope of his apparent duties. If the carrier seeks to limit his powers, it must have its rules limiting the agent's powers posted in its passenger depots, or else it must call the passenger's attention to the limitation, or bring it to his attention, to prevent liability for breach of a special contract by its ticket agent.

2. Carriers. *Instructions as to liability for carrying child past destination in violation of special contract held not erroneous.*

   In a suit for damages for failure to put a child off at its destination, under a special contract so to do, to instruct the jury that, if the jury believed the ticket agent agreed that the conductor would put the child off at its destination, and that the conductor promised the same thing, and if they believed that it was within the scope of the authority of these employees to bind the railroad company by an agreement or promise made by the conductor and ticket agent, that then the defendant would be liable for the conductor's failure to put the child off, is not erroneous, where the evidence sustains such facts. The fact that the conductor was without authority to make a special contract would be immaterial, where the ticket agent had such power and did make such contract. It merely imposed on the plaintiff the necessity of proving more than was needed under the law, it being sufficient to prove that the ticket agent had power to and did make such contract, and that the carrier breached its duty thereunder.

3. Appeal and Error. *Carriers. Where verdict is excessive, appellate court may reverse and remand or affirm on remittitur; one thousand five hundred dollars held excessive for carrying child*

*past destination, frightening it, and causing it to contract cold.*
Where, on a trial for carrying a child of tender years beyonds its
destination in violation of a special contract, the verdict is
grossly excessive, the court may reverse and remand the cause,
or it may affirm on condition that plaintiff will enter a *remit-*
*titur* to a named amount, deemed sufficient by the appellate court.
The evidence examined, and verdict in this case *held* excessive.

APPEAL from circuit court of Sunflower county.
HON. S. F. DAVIS, Judge.

Action by Sidney O'Keefe against the Yazoo & Missis-
sippi Valley Railroad Company. Judgment for plaintiff,
and defendant appeals. Affirmed, with *remittitur*.

*Clinton H. McKay,* for appellant.

The conductor was without authority to bind defend-
ant by his promise to put the boy off at Blaine. *Railroad*
v. *Kendrick,* 40 Miss. 385; *Railroad* v. *Statham,* 42 Miss.
607; *Sevier* v. *Railroad,* 61 Miss. 8; *Gage* v. *Railroad,* 75
Miss. 17; *Weightman* v. *Railway,* 70 Miss. 563. 2. The
ticket agent, likewise, was without authority to do so.
Same authorities, *supra.* *Gilkerson* v. *Atlantic C. L. R.*
*Co.,* L. R. A. 1915-C, 664, 83 S. E. (R. S.) 592. 3. Where
instructions are confusing and misleading they are ground
for reversal. *Malone* v. *Robinson,* 12 So. (Miss.) 709.
4. Where the trial court assumes facts in his instructions
which are not supported by any evidence, reversible error
is committed. *Davis* v. *Heckle,* 118 Miss. 74; *Railroad* v.
*Lott,* 118 Miss. 816; *Telegraph Co.* v. *Robertson,* 109 Miss.
775; *Railroad* v. *Dyer,* 102 Miss. 870. 5. Where the verdict
is so excessive as to indicate passion, prejudice or un-
accountable caprice on the part of the jury, a proper re-
mittitur will be ordered. *Pullman Co.* v. *Anderson,* 119
Miss. 791.

*Franklin and Easterling,* for appellee.

Counsel for the appellant contend that the conductor
was without authority to bind the defendant by his promise

to put the boy off at Blaine, and, also, that the ticket agent likewise was without authority to do so and cites several cases.

We would like to ask, if the ticket agent cannot bind the company and the conductor cannot bind the company, then who could bind the company at all? We contend that the authorities cited by counsel do not substantiate his conclusions; but, on the contrary are directly the reverse. We especially call attention of the court to the case of *Weightman v. The L. & N. O. & T. R. Co.,* reported in 70 Miss. 563; 35 A. S. R. 660. Judge Woods, in distinguishing that case from the *Sevier case,* 61 Miss. 8, 48 Am. Rep. 74.

In the *Gage case,* cited by counsel, 75 Miss., page 17, 21 So. 657, after stating the facts in that case the court speaking through Calhoun, Special Judge, says: "There was no understanding with the ticket agent that the boy should be or needed to be especially looked after by the railroad company."

We submit that the Gage case is authority for the appellee in this case and conclusive authority, for in this case, the plaintiff's attention was called to the ticket agent's notice and the ticket agent informed the plaintiff's father that the company would look after him and that it was safe for him to go in the care of the conductor, and before the plaintiff was placed upon the train, the matter was called to the attention of the conductor by the plaintiff's father, who gave the conductor plaintiff's ticket and the conductor then and there agreed that he would care for the plaintiff and put him off at his destination, which he failed and neglected to do. On the same point, we call attention of the court to the case of *Wells* v. *Ala., G. S. R. R. Co.,* reported in 6 So., page 737; *Illinois Central R. R. Co.* v. *Reid,* 46 So., 146; 6 Cyc., p. 599; 5 Am. & Eng. Ency Law (2 Ed.); 2 Hutchinson on Carriers. (32 Ed.), paragraph 992.

Our own supreme court in the case of *Illinois Central R. R. Co.* v. *Smith,* 85 Miss. 335, 70 R. L. A. 642, 37 So. 643,

state the general rules affecting the liability of carrier.

We further call the court's attention to the case of *Croom v. Chicago, etc., Ry. Co.,* 38 Am. St. Rep. 557. See 4 R. C. L., paragraph 594; also see 6 Cyc. 599.

We submit that the facts of this case as conclusively proven in the court below, bring the case squarely within the rule announced by the decisions quoted above.

*J. B. Guthrie,* for appellee.

We shall discuss several points involved in this case in the order set out by counsel for appellant on page 13 of his brief.

1. That the conductor was without authority to bind the defendant by his promise to put the boy off at Blaine. In support of this position counsel cites certain cases from the Mississippi supreme court, and for the sake of brevity we shall not burden our brief with the same citations except to discuss the several cases cited by appellant. We desire to call special attention to the case of *Gage* v. *Railroad Company,* 75 Miss. 17, which is quoted in full by appellant and beginning on page 17 and ending on page 19. We call the court's special attention to this citation towards the end of that opinion, which statement by the court is as follows:

"Unless, by previous contract with the company, he was under no duty to see that the boy was put off. The company's duty ended when the station was called out, as we must presume was done, in the absence of proof to the contrary. This case bears no analogy to that of *Weightman* v. *Railway Co.,* 70 Miss. 563, as will appear on slight examination."

From the foregoing quotation from this case it will be observed that the court held that the conductor was under no obligation to bind defendant by his promise to put the boy off at Blaine unless there was a previous contract with the company. The holding of the Gage case is not that a conductor may not bind his company and was not

under any duty when such promise was made by him but that such promise and duty is dependent upon the question of whether or not a previous contract had been entered into with the company for the proper care of a person traveling under disability.

We submit that no particular form of words was necessary to constitute such previous contract with the company. That any form of words which would show the disability of the party seeking transportation and any words or action on the part of the company whereby such person under disability is accepted for transportation is sufficient to constitute a contract of the character referred to in the Gage case.

Not only was the contract made before the transportation began, but it was again called to the company's notice and brought home to it when the train arrived and the father placed the boy on the train and procured the conductor's promise to put him off at Blaine.

In the case at bar there was a previous contract and, therefore, the conductor was under duty to see that the boy was put off. In the Gage case because no previous contract was shown, the court held that the company's duty ended when the station was called out, but in the case at bar, there being a previous contract the company's duty only ended when it had complied with its contract by putting the plaintiff off at his destination, and for violation of this duty a right of action accrued and the plaintiff, appellee here is entitled to recover.

The case of *Croom* v. *Chicago, Milwaukee & St. Paul Railroad Company*, 18 L. R. A. 602, decided by the Minnesota supreme court is a case in point. We also quote from 2 Hutchinson on Carriers (3 Ed.), p. 1316, under section 1121, where, after announcing the general rule, announces the exception as follows, to-wit: "Exceptional circumstances however, may impose this duty, as where considerations of age, sex, or physical infirmity may bring that within the scope of the conductor's duty towards a passenger, although otherwise it would be beyond the limit of

such obligation. But, it must appear that the conductor knew such exceptional facts in order to bind the company."

And in the footnote 20, *Railway Co.* v. *Boyles,* 11 Tex. Civ. App., 522, 33 S. W. 247, there is the following statement: "Where a female passenger is deaf, and the name of the station is announced by the porter, it being a station short of her destination, and she alights supposing that her destination has been reached, the carrier is not liable for failure to carry her to destination where the servants in charge of the train had no notice of her infirmity," the implication being that if the employees had known of the infirmity the railroad company would have been liable. *Weirling* v. *St. Louis, etc., Ry. Co.,* 115 Ark. 505, 171 S. W. 901; Annotated Cases, 1916-E, page 253; *St. Louis, etc., R. Co.* v. *Woodruff,* 89 Ark. 915, 16, 115, S. W. 953; Thompson on Carriers of Passengers, section 5, pages 270, 271; *Cincinnati, etc. R. Co.* v. *Cooper,* 120 Ind. 469, 22 N. E. 3240, 16 Am. St. Rep. 334, 6 L. R. A. 241; See, also, *Croom* v. *Chicago, etc., R. Co.,* 52 Minn. 296, 53 N. W. 1128, 38 Am. St. Rep. 557, 18 L. R. A. 602; 4 Elliott on Railroads, sec. 1577, p. 371, 6 Cyc. 598, and note; *Adams* v. *St. Louis, S. W. R. Co.* (Tex.), 137 S. W. 437.

We might continue to cite case after case on the exceptions to the general rule, but we shall stop here by citing one other case from the Mississippi Supreme Court, the case of *Weightman* v. *Railway Company,* 70 Miss. 563. To the same effect will be found *Railroad Co.* v. *Moore,* 83 Va. 827; *Railroad Co.* v. *Weber, Adm'r,* 33 Kan. 543; *Railroad Co.* v. *Powell, Admr.,* 40 Ind. 37; *Hale, Admr.* v. *Railway Co.,* 21 Iowa, 15; *Railway Co.* v. *Miller,* 19 Mich. 305.

We submit that the holding in the foregoing cases should be the holding in the case at bar because here we have the case of an infant, six years old, with the knowledge of his tender years brought home to the ticket-agent before selling the ticket, and the assurance of the agent that it would be safe for this child to be sent, and with the knowledge also of the tender years of plaintiff being communicated to the conductor, and the conductor's promise that he

would put the boy off at Blaine, and, in addition to that the specific injunction of the conductor to the boy to sit still in his seat until he (the conductor) told the boy to get off.

Counsel argues that the case at bar bears no analogy to the Weightman case, since the basis for recovery in the Weightman case is "wanton, reckless, inhuman conduct of the defendant in putting an almost dying man from its train under the revolting circumstances set out in the declaration" and says that the duty which was breached in the Weightman case was the duty which common humanity proclaims not to wantonly or recklessly injure another and says that the case rests upon the humanitarian doctrine.

We submit to the court that the case at bar, dealing with a child six years of age, is as much within the humanitarian doctrine as that in the Weightman case, because the defendant company agreed before the ticket was sold, with full knowledge of the circumstances, and the tender years of the plaintiff, and for the defendant to breach its duty in the manner shown by this case by carrying the plaintiff past his destination and putting him off at a place where he knew nobody and where there were numbers of negroes around the depot, and a heavy rain came up during the time this child was at Sunflower and he became drenching wet, etc., was as much a breach of duty to humanity as could be said to be in the Weightman case. The only difference we can see in the two cases in that the Weightman case was more highly aggravated and Young Weightman was left without attention for a longer time, but the principle of law is identical in both the cases of appellee and the Weightman case. We must confess that we are absolutely unable to draw any distinction in the two cases from a humanitarian standpoint.

We further submit that the railroad company was bound and became liable by the action of the ticket agent and conductor, and that the question of liability under the facts in the case should have been submitted to the jury as

was done.   We further submit that all other authorities cited by counsel for appellant in support of his contentions, as to the authority of the ticket agent and conductor to bind the company, are cases on the general rule and not authorities supporting the exception to the rule which we maintain is the correct solution for the case at bar.

The verdict is not excessive.   Counsel for appellants contend that the amount of the verdict is manifestly excessive, and the result of passion, prejudice and unaccountable caprice on the part of the jury.

On this point we do not care to submit any authorities but we do contend that the verdict is not excessive for the reason that the injury to the plaintiff, a child of six years, put off at a station where he knew no one, and no one knew him, surrounded as he was, and as is shown by the record, by negroes and at a time when there were heavy rains, and he became drenching wet contracted a cold, became very nervous—had considerable fever and commenced having chills and fever.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court for one thousand five hundred dollars in favor of the appellee, growing out of the appellee being carried by the station of his destination.   The appellee, the plaintiff, at the time he was carried by his station was a minor six years old.   The father of the plaintiff went to the ticket agent at Rome, Miss., and stated to him that his child was inexperienced, and was not used to traveling alone, and asked the ticket agent if it would be safe to send the minor child to Blaine, Miss., in care of the conductor, and the ticket agent informed him that it would be.   Thereupon plaintiff's father purchased the ticket, carried the ticket and the child to the train, and placed the child in charge of the conductor; the conductor promising to put the child off at Blaine, and taking the child to a seat and telling

him to remain there until he came for him to put him off at the right place.    When the train reached Blaine the conductor forgot to put the child off and carried him past his station.    After discovering that he had carried the child past his station he went to the child and told him that he would have to put him off at Sunflower, Miss., but that he would come back for him in about an hour.    The child was put off at Sunflower, and the conductor on meeting the train coming back by Sunflower, told the conductor of that train about the child being left at Sunflower and requested him to take him on board his train and carry the child back to Blaine and put him off there and place him in some one's care.    The conductor did so, and on the way to Blaine found a citizen on the train who would stop at Blaine and who agreed to take care of the child.    The plaintiff's aunt was to meet him at the train which he first boarded at Blaine, and she did meet the train, but as the child did not get off she returned to her home in the country some three or four miles.    The child testified that when he was put off the train he was alone, knew no one and was frightened, and sat down and cried.    He also testified that it rained while he was at Sunflower and he got wet; that on the way to Mr. Blount's home he again got wet, and that he was nervous and excited and contracted cold, and woke up the following morning sick; that he was carried the next day to his aunt's residence, and continued sick and had chills and fever for some three or four weeks.    His aunt was a trained nurse, and testified that the child was nervous and sick when he came to her home, and that he had chills and fever for three or four weeks; that she was not able to treat him successfully, and he was sent home and was there treated by a physician.    The child's father testified also as to the conversation with the ticket agent and with the conductor and in reference to the child's illness after reaching home, and that the child was subsequently afraid to travel alone and was nervous and fearful to a greater extent than he had even been before. There was a verdict for one thousand five hundred dollars.

It is contended for the appellant that the conductor was without authority to bind the defendant by his promise to put the boy off the train at Blaine, and also that the ticket agent was likewise without authority to do so; that the instructions were confusing and misleading and constituted grounds for reversal; that the trial court assumed facts in the instructions which were not supported by the evidence; and that the verdict is so excessive as to indicate passion, prejudice, or unaccountable caprice on the part of the jury.

This court has held in several cases that the conductor is generally without authority to make agreements to give special attention to particular passengers, on the ground that it is contrary to public policy for him to discriminate between passengers, and that such agreements are generally without the scope of his authority. *Railroad Co.* v. *Kendrick,* 40 Miss. 374, 90 Am. Dec. 332; *Railroad* v. *Statham,* 42 Miss. 607, 97 Am. Dec. 478; *Sevier* v. *Railroad,* 61 Miss. 8, 48 Am. Rep. 74; *Gage v. Railroad,* 75 Miss. 17, 21 So. 657. It is not generally the duty of the conductor to make contracts for the railroad company as to the carriage of passengers; that duty is generally confided to the station agent or ticket agent. We think, however, that the ticket agent has authority to make contracts for the railroad company as to the carriage of passengers. Such contracts are within the scope or apparent scope of his powers and duties. The railroad company is not required to accept for carriage small children unattended, or sick persons unattended, or any person unattended who is not competent to take care of himself, but the railroad company has power to contract specially to carry such persons, and if they do so contract and carry such persons they owe them such reasonable care and attention as the circumstances call for. *Weightman* v. *Railroad,* 70 Miss. 563, 12 So. 586, 19 L. R. A. 671, 35 Am. St. Rep. 660; 5 Amer. & Eng. Enc. L. 538; *Croom* v. *Railroad Co.,* 52 Minn. 296, 53 N. W. 1128, 18 L. R. A. 602, 38 Am. St. Rep. 557.

In the present case there is nothing in the record to show that any rule forbidding a contract of this kind was called to the attention of the child's father, or that such rule was posted in a conspicuous place in the passenger depot, where it might be easily seen and read by the traveling public. We think the conversation between the ticket agent and the child's father, followed by the sale of a ticket and the placing of the child in the care of the conductor to be put off at Blaine, and the act of the conductor instructing the child to remain seated where it was placed until the conductor returned for him, constitutes a contract with the railroad-company to carry the child and put him off at his destination. Some one must represent the carrier in the transaction of its business, and a ticket agent generally is vested with power to make contracts for the railroad company, and, notwithstanding the agent testified in the case that he had no authority to make such a contract, there is nothing in the record to show that any limitation of his powers was called to the attention of the parties, or was posted in a conspicuous place in the passenger depot. In the absence of such a rule so posted or brought to the knowledge of the plaintiff's father, the railroad company must be held to have contracted with the plaintiff to put him off at his destination.

Instructions for the plaintiff, Nos. 1, 3, and 7, are complained of, and it is insisted that they told the jury, in substance, that, if they believed the ticket agent promised that the conductor would put the boy off at his destination, and the conductor also promised the same thing, and if they believed it was within the scope of the authority of these employees to bind the railroad company by an agreement or promise made by the agent and conductor, then that the defendant railroad company would be liable for the conductor's failure to put the boy off. We have examined these instructions, and we think they are not erroneous and that they come within the principles above announced. We do not think these instructions assumed facts that are not in evidence.

It is next assigned for error that the verdict is excessive. It is always a matter of some difficulty for an appellate court to say with precision what damages should be allowed for an illness resulting from a breach of duty by a railroad company. It is clear from the evidence that the illness, so far as the chills and fever were concerned, was not the result of the railroad company's breach of duty. It does appear that the child was somewhat frightened and suffered from a cold. And though the child also suffered from malaria, and probably the cold hastened the development of malaria into chills and fever, still the malaria was not caused by the breach of duty. The cold does not appear to have been serious, and if taken alone would probably not be serious. The child's evidence as to the facts bearing on getting wet and taking cold is contradicted, but that presented a question for the jury to settle; but, taking the child's testimony as true as to getting wet and being frightened and contracting cold, we still think the verdict is grossly excessive.

In our judgment the verdict should be limited to three hundred dollars, and, if the appellee will enter a remittitur of all in excess of three hundred dollars, the judgment will be affirmed; otherwise it will be reversed and remanded for a new trial.

*Affirmed, with remittitur.*