DIXIE GREYHOUND LINES, INC., *v.* EVERETT.

(Division B.    March 27, 1939.)

[187 So. 508.    No. 33603.]

Chandler, Shepherd, Owen & Heiskell, of Memphis, Tenn., for appellant.

Chalmers Potter, of Jackson, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The appellant operates a bus line, and is a common carrier of passengers for hire between Jackson, Mississippi, and Memphis, Tennessee, and particularly through the Town of Cruger in this State, some distance north of Jackson. Appellee, who was accompanied by her brother, Gladney Grey, purchased a ticket from the agent at Jackson to the Town of Cruger for the purpose of going on the bus to that point on a visit to her brother, Ed Grey, who was then critically ill. They had not been

to Cruger on any previous occasion, and neither of them knew just where Ed Grey lived, except that the letter which they received informing them of his illness stated, as they remembered its contents, that Ed's home was about one mile north of Cruger. After boarding the bus at Jackson appellee's brother, Gladney Grey, claims to have had a conversation with the bus driver along the route in which he asked him whether he could put them off "one mile north of Cruger, between Cruger and Sidon, at an old store," and informed the bus driver of the purpose of their journey. Thereupon, he was told by the bus driver that he did not know Ed Grey. Then, in an effort to help the bus driver fix the place in mind, Gladney Grey says that he told him that his brother Ed had "five little children, like stair steps," etc. The result was that the bus driver, through some misunderstanding, stopped the bus at an old store, where several small children were often seen by him, but some three or four miles south instead of one mile north of Cruger; and there he let these two passengers off.

Since it is admitted that the bus driver told the witness Gladney Grey in the first instance that he did not know Ed Grey, we think that it necessarily follows that the witness understood thereby that the bus driver did not know where Ed Grey lived, and that he was merely undertaking to locate the place from such description as the witness was able to furnish him, and who had mentioned the old store and the fact that there were five little children about the place. The place at which bus stopped and let these two passengers off corresponded with the description, except that the witness claims to have specified one mile north of Cruger, whereas the bus driver claims to have understood that he was undertaking to describe such a place out from or near Cruger.

It has been repeatedly held in regard to railroads that a conductor is without authority to agree with an individual passenger to carry him to a particular place and allow him to leave the train at such a place, and thus bind the company as to a destination other than called for in

the ticket, and that if a conductor makes a promise, or enters into an agreement with a passenger which he is not authorized to make, no liability could attach to the railroad company for the violation of any part of such agreement. Ordinarily, a special agreement for transportation is required to be made with the ticket agent, since a conductor has no authority to contract for transportation. Wilson v. New Orleans & N. E. R. Co., 68 Miss. 9, 8 So. 330; Gage v. Illinois C. R. Co., 75 Miss. 17, 21 So. 657; Sevier v. Vicksburg & Meridian R. Co., 61 Miss. 8, 48 Am. Rep. 74; Sellers v. Cleveland C. C. & St. L. R. Co., 40 Ind. App. 319, 81 N. E. 1087; Pittsburgh C. & St. L. Ry. Co. v. Nuzum, 50 Ind. 141, 19 Am. Rep. 703; and Yazoo & M. V. R. Co. v. O'Keefe, 125 Miss. 536, 88 So. 1.

However, there may be some force in the argument here made by the appellee to the effect that where bus drivers follow a uniform practice over a long period of time of discharging and taking on passengers at cross-roads or any other point along the route other than regular stops, and such practice is known to the bus company, the authority of the bus driver to make such an agreement with a passenger cannot be denied, but it is unnecessary that we here decide that question for the reason that in any event there could be no liability on the part of the bus company unless it should affirmatively appear that the bus driver thoroughly understood and knew what place the passenger desired to be discharged, and should then knowingly or negligently violate such special agreement let him off at that place. In the case at bar, it is perfectly clear that there was an honest mistake or misunderstanding on the part of the bus driver as to where the appellee desired to leave the bus in question. We are therefore of the opinion that under the particular state of facts testified to the appellee could not recover on an alleged breach of the special agreement declared on in this case.

Neither can the judgment here appealed from be permitted to stand on the testimony of the appellee herself, which is in direct conflict with the alleged special agree-

ment sued on. She testified, contrary to the testimony given by her brother, that she bought her ticket from Jackson to Cruger, boarded the bus and did not say a word to the bus driver anywhere on the route. Moreover, she claimed that her brother told her that neither did he say anything to him; and that she thought that she was being let off the bus at Cruger, the point of destination called for by her ticket. This testimony was in direct conflict with the special agreement alleged in the declaration to have been made by her with the bus driver, and should have been excluded upon the motion of the appellant in that behalf, as being entirely at variance with the facts alleged in the declaration. Wells v. Alabama G. S. R. Co., 67 Miss. 24, 6 So. 737; Chism v. Alcorn, 71 Miss. 506, 507, 15 So. 73; 13 C. J. S., Carriers, section 665, pages 1237, 1238. She failed to amend her declaration when her attention was called to the fact that her testimony constituted an abandonment of the alleged cause of action sued on.

Reversed and judgment here for the appellant.